*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0249P (6th Cir.)
File Name: 04a0249p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*          No. 03-1855

DARRELL J. MARTIN,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00007—Gordon J. Quist, District Judge.

Argued: June 16, 2004

Decided and Filed: July 29, 2004

Before: SILER, DAUGHTREY, and SUTTON, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC
DEFENDERS OFFICE, Grand Rapids, Michigan, for
Appellant. Andrew Byerly Birge, UNITED STATES
ATTORNEY, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC
DEFENDERS OFFICE, Grand Rapids, Michigan, for

Appellant. Andrew Byerly Birge, UNITED STATES
ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————

**OPINION**

———————

SUTTON, Circuit Judge. A federal grand jury indicted
Darrell Martin for possessing a firearm in violation of
18 U.S.C. §§ 922(g) and 924(a)(2), and he pleaded guilty to
the offense. Determining that the State of Michigan had
successfully prosecuted Martin for at least one prior "crime of
violence"—either third-degree fleeing and eluding or resisting
and obstructing a police officer—the district court gave
Martin a base-offense level of 20 under § 2K2.1(a)(4)(A) of
the Sentencing Guidelines. Martin appeals his sentence,
claiming that neither conviction constitutes a crime of
violence. Concluding that third-degree fleeing and eluding
under Michigan law is a crime of violence, we affirm.

I.

On September 10, 2002, officers of the Muskegon,
Michigan police department identified a stolen car and
proceeded to follow it. As the car rounded a corner, it slowed
down and (before it had stopped) the two occupants of the car
jumped out of the moving car and fled. Police chased the
men but apprehended only one of them, whom they later
identified as Darrell Martin. As the officers ordered Martin
to the ground, they noticed a handgun lying on the ground
five or six feet away. Martin acknowledged that he owned
the weapon, and the officers arrested Martin and placed him
in custody.

On January 9, 2003, a grand jury indicted Martin for being
a felon in possession of a firearm in violation of 18 U.S.C.
§§ 922(g) and 924(a)(2). He pleaded guilty to the charge.

In its presentence report, the Government recommended a base-offense level of 20 under § 2K2.1(a)(4)(A) of the Sentencing Guidelines. That provision says defendants who violate certain firearms-related laws must receive a base-offense level of 20 if they committed the offense "subsequent to sustaining one felony conviction of [] a crime of violence," as defined by § 4B1.2(a) of the Guidelines and its application note 1. In the Government's view, Martin previously had been convicted of two qualifying offenses: (1) "Resisting and Obstructing a Police Officer" under Mich. Comp. Laws § 750.479 (as written prior to the 2002 amendments), and (2) "Fleeing and Eluding–3rd [degree]" under Mich. Comp. Laws § 750.479a(1) and (3). JA 68–69. Martin argued that neither conviction constituted a "crime of violence" under the Guidelines and that his base-offense level should be 14, not 20.

The district court adopted the Government's recommendation. It then added a 2-level upward adjustment under U.S.S.G. § 2K2.1(b)(4) (possession of a stolen gun) and a 3-level downward adjustment under U.S.S.G. § 3E1.1 (acceptance of responsibility), all of which generated an offense level of 19. Combining this offense level with his criminal history category (V), the Sentencing Guidelines gave Martin a sentencing range of 57 to 71 months, and the district court sentenced him to a 57-month prison term.

## II.

Martin challenges his sentence on appeal, arguing that § 2K2.1(a)(4)(A) does not apply because he had not been convicted of any "crimes of violence" at the time he committed the § 922(g) offense. As the parties agree, we give fresh review to the legal question whether either of Martin's convictions constitutes a "crime of violence." *See United States v. Bass*, 315 F.3d 561, 564–65 (6th Cir. 2002). And as the parties also agree, Martin's sentence may be affirmed if either the fleeing-and-eluding conviction or the resisting-and-obstructing conviction amounts to a "crime of violence." In

this instance, we need consider only whether Martin's fleeing-and-eluding conviction qualifies.

### A.

Section 2K2.1(a)(4)(A) of the Sentencing Guidelines confers a base offense level of 20 on defendants convicted of offenses for "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition" if the defendant "committed any part of the [] offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The application notes to the provision refer the reader to § 4B1.2(a) and its accompanying application note 1 for a definition of a "crime of violence." U.S.S.G. § 2K2.1 cmt. n.5. Under the definition provided in § 4B1.2(a), "crimes of violence" encompass

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that-- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The accompanying application note expands the list of enumerated offenses to include "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling" as "crimes of violence," and reiterates that other offenses also count as "crimes of violence" if

(A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any

explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1. Because neither the Guideline nor its application note names fleeing and eluding as a crime of violence, that offense must either (1) have "as an element the use, attempted use, or threatened use of physical force against the person of another" or (2) "present[] a serious potential risk of physical injury to another" to qualify. U.S.S.G. § 4B1.2(a) & cmt. n.1.

In deciding whether an offense amounts to a "crime of violence" under these two tests, we have applied a "categorical approach," which is to say we have looked at "the fact of conviction and the statutory definition of the predicate offense," not the "underlying facts regarding the offense," to determine whether either test is satisfied. *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995); *see United States v. Champion*, 248 F.3d 502, 505 (6th Cir. 2001) (applying categorical approach in determining whether an offense has as an element "the use, attempted use, or threatened use of physical force"); *United States v. Payne*, 163 F.3d 371, 374 (6th Cir. 1998) (applying categorical approach in determining whether an offense entails "serious potential risk of physical injury"); *cf. Taylor v. United States*, 495 U.S. 575, 602 (1990) (applying the same approach in determining whether an offense is a "violent felony" under the armed career criminal statute). If the relevant statute of conviction does not supply a clear answer to these inquiries, as Martin concedes, Appellant's Br. at 16, the sentencing court may consult the indictment and either the jury instructions or plea agreement for the specific conduct with which the defendant was charged in order appropriately to characterize the offense. *See United States v. Kaplansky*, 42 F.3d 320, 322 (6th Cir. 1994) (en banc); *see also Bass*, 315 F.3d at 565 ("[W]hen it is not clear from the elements of the offense alone whether the crime involved a serious risk of potential injury to another, the sentencing court may review

the indictment for the specific conduct charged.") (quotation omitted).

### B.

Martin's presentence report indicates, and the parties agree, that Martin pleaded guilty to fleeing and eluding in the third degree in violation of Michigan Compiled Laws § 750.479a(1) and (3). That statute says that "[a] driver of a motor vehicle who is given . . . [a] signal by a[n] officer . . . directing the driver to . . . stop shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the . . . officer." Mich. Comp. Laws § 750.479a(1). A person commits the offense in the third-degree if the violation "results in a collision or accident," if the violation "occurred in an area where the speed limit is 35 miles an hour or less" or if the defendant has a previous conviction for actual or attempted fourth-degree fleeing and eluding or similar misconduct. *Id.* § 750.479a(3). The charging document—which is described in the presentence report (in language to which the defendant did not object)—says that Martin committed the third-degree offense by causing "a collision or an accident" or by failing to stop while in a 35-mile-per-hour zone, or both. JA 69.

Because fleeing and eluding does not have as an element "the use, attempted use, or threatened use of physical force against the person of another," the pertinent question is whether the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). We believe that it does.

When a motorist disobeys an officer and flees in his car, whether by "increasing [his] speed," "extinguishing the [car's] lights" or by "otherwise attempting to flee," that person creates a conspicuous potential risk of injury to pedestrians, vehicles sharing the road, passengers in the fleeing car and the pursuing officer. *See United States v.*

*Howze*, 343 F.3d 919, 922 (7th Cir. 2003) (noting that with the offense of flight, "[b]ystanders are in particular jeopardy" and "[c]ollisions between fleeing vehicles and pedestrians or others who get in the way are common"). That Martin committed this offense either by causing a "collision or accident," Mich. Comp. Laws § 750.479a(3)(a), or by fleeing in a 35-mile-per-hour zone (presumably a residential or school area), *id.* § 750.479a(3)(b), confirms the palpable risk of physical injury to others caused by flight under the statute.

At the same time that flight itself creates a risk of injury to others, so too does the suspect's eventual apprehension. By making a deliberate choice to disobey a police officer, the motorist provokes an inevitable, escalated confrontation with the officer. In this regard, fleeing and eluding resembles escape, *see Howze*, 343 F.3d at 921–22; *United States v. James*, 337 F.3d 387, 391 n.4 (4th Cir. 2003), which nine courts of appeals (including this one) have agreed constitutes a "crime of violence" under the Guidelines, regardless of whether the defendant forcefully escaped from a maximum security prison or walked away from a halfway house. *See United States v. Thomas*, 361 F.3d 653, 656 & n.4 (D.C. Cir. 2004) (citing cases); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999). Both escape and fleeing from a police officer represent "continuing offense[s]," *Thomas*, 361 F.3d at 660, which heighten the emotions and adrenaline levels of the parties involved, *see United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994) (attributing the risk of injury inherent in escape at least partially to the "supercharged emotions" involved in "evading those trying to recapture" the suspect), and which generally end with a confrontation between the officer and the escapee or fleeing driver, *Thomas*, 361 F.3d at 660. Such a confrontation "inherently presents the serious potential risk of physical injury" because the fleeing driver "intent on his goal" of eluding the officer "faces the decision of whether to dispel the [officer's] interference or yield to it." *United States v. Dickerson*, 77 F.3d 774, 777 (4th Cir. 1996).

Indeed, fleeing and eluding in most settings will pose a greater risk of injury than escape. *Howze*, 343 F.3d at 922. While an escape and fleeing alike involve the potential for dangerous confrontation between the suspect and police officers, not all escapes involve flight and the inherent third-party risks that such conduct entails. *Id.* Because fleeing and eluding an officer while in a car generally will present serious *potential* risks of physical injury to third parties—the only relevant inquiry—it necessarily qualifies as a "crime of violence" under the Guidelines.

To date, two courts of appeals have reached a comparable conclusion. *See Howze*, 343 F.3d at 921–22 (determining that the offense of fleeing from an officer under Wisconsin law presents a "serious potential risk of physical injury to another," relying in large part on the offense's similarity to, and even greater potential for danger than, an escape); *James*, 337 F.3d at 390–92 (same, South Carolina law). While *Howze* and *James* concluded that fleeing from an officer in a car "presents a serious potential risk of physical injury to another" in the course of concluding that the offense is a "violent felony" under the armed career criminal statute, 18 U.S.C. § 924(e), rather than a "crime of violence" under the Sentencing Guidelines, this difference in the predicate provisions does not alter our analysis. The relevant language of the two provisions—"serious potential risk of physical injury to another"—is the same. And this Court has held that the two provisions entail the same basic inquiry. *See, e.g., Arnold*, 58 F.3d at 1121.

That the Michigan fleeing-and-eluding statute may "be violated by conduct that is passive, non-violent, and non-threatening," Appellant Br. at 17, does not demand a different conclusion. The Guideline defines offenses presenting a "serious *potential* risk of physical injury" as crimes of violence; it does not require that actual injury or violence occur or even that the risk of injury materialize in a given case. *See United States v. Winn*, 364 F.3d 7, 11 (1st Cir. 2004) ("It is irrelevant whether the [crime of violence]

actually involved any violence.") (quotation omitted); *Payne*, 163 F.3d at 375 (noting that "under the categorical approach" it is not relevant whether a "physical injury actually occurred in the case at bar"); *Gosling*, 39 F.3d at 1142 (acknowledging that escape "may or may not explode into violence and result in physical injury" but "always has the serious *potential* to do so"). To require crimes of violence in all fact patterns to lead to a violent or harmful end not only would ignore our categorical approach to this inquiry, but it also would read the "serious potential risk of physical injury" language out of the Guideline. *See* U.S.S.G. § 4B1.2(a)(2); *Thomas*, 361 F.3d at 658–59.

Nor does it make a difference that Martin could have violated the statute by committing a prior violation of fourth-degree fleeing and eluding instead of causing an accident or fleeing in a 35-mile-per-hour zone. *See* Mich. Comp. Laws § 750.479a(3) (stating that a defendant commits third-degree fleeing and eluding if (1) "[t]he violation results in a collision or accident," (2) "[a] portion of the violation occurred in an area where the speed limit is 35 miles an hour or less" or (3) "[t]he individual has a prior conviction for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under [another provision] prohibiting substantially similar conduct"). Even if it were true that the fourth-degree offense—which entails the same conduct as third-degree fleeing and eluding, but without the additional factor of an accident, a 35-mile-per-hour zone or a prior fleeing-and-eluding conviction, *id.* § 750.479a(2)—does not pose a serious potential risk of physical injury, as Martin alleges, case law makes clear that we must look at the conduct charged in the indictment when the statutory offense potentially covers violent and non-violent crimes. *See Bass*, 315 F.3d at 565–66 (noting that the indictment charged the defendant with "aggravated" child abuse while the statute under which the defendant was convicted encompassed a broader range of conduct); *United States v. Winter*, 22 F.3d 15, 18–19 (1st Cir. 1994) (determining that where the statutory definition of an offense encompasses both violent

and non-violent crime, courts may look to the "nature and object of the [] activity as described in the indictment and fleshed out in the jury instructions"). In this instance, Martin's indictment under the statute charged him with fleeing that caused an accident, or fleeing in a 35-mile-per-hour zone, or both.

Because the language of the Guideline is clear—that "potential" risk of injury rather than actual violence or injury is the touchstone of a violent crime—Martin's appeal to the rule of lenity does not add traction to his argument. *See United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001) (noting that lenity applies if ambiguity remains after considering the plain language and structure of the statute). Nor, at all events, is the rule of lenity the only safety valve available. Had the district court believed that the calculation of Martin's criminal history category under the Guidelines resulted in an inequitable sentence, § 4A1.3 would have permitted a downward adjustment. The court, however, considered and rejected that option.

### III.

For the foregoing reasons, we affirm the defendant's sentence.