NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0820n.06
Filed: October 6, 2005

Nos. 04-4099, 04-4172

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| ANGELO HOWARD, | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellant.* | ) | |

BEFORE:     NELSON and SUTTON, Circuit Judges; ZATKOFF, District Judge[*]

**Lawrence P. Zatkoff, District Judge.** Defendant-Appellant Angelo Howard appeals the district court's denial of his Motion to Suppress Evidence and of his challenge to the Government's disclosures under the Jencks Act. Following the district court's denials of Defendant's motions, and after conducting a bench trial, Defendant was found guilty of being a felon in possession of a firearm and sentenced to 51 months of prison, three years of supervised release, and a fine of $750. In addition to Defendant's appeal, Plaintiff-Appellee United States (hereinafter, "the Government") has filed a cross-appeal in this case challenging the district court's compliance with the Sentencing Guidelines.

Because the district court did not err in denying Howard's Motion to Suppress Evidence nor

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

in denying his challenge under the Jencks Act, we **AFFIRM** the judgment of the district court as to these issues. We find that the district court erred, however, in calculating Howard's offense level under the Sentencing Guidelines. Accordingly, we **REVERSE** the judgment of the district court as to this issue and **REMAND** for re-sentencing.

## I. BACKGROUND

**A. Factual History**

On March 26, 2003, at about 1:45 a.m., Cincinnati Police Officer Terry Windeler and her training recruit were dispatched to 2515 Burnet Avenue. The dispatch was based on a 911 call that someone was breaking into a vehicle at that location. Based on the 911 call, Officer Windeler was informed that a 25 year-old, heavy black male had broken into a car, stolen some CD's, was intoxicated, and was sitting in a grey Neon with license plate C030AJ.

When the officers arrived at the scene, they observed a heavy black man (later identified as Defendant Angelo Howard) about 20 feet from the sidewalk. The officers stopped their police cruiser about fifteen feet from Howard and shined their headlights on him. Howard lifted his hands as if he were going to put them in his pockets. At this point, Officer Windeler was now standing behind the door of her police cruiser. In response to Howard's motion, Windeler put her hand on her gun and yelled for Howard to keep his hands out of his pockets. Howard complied with the order.

Officer Windeler then approached Howard and asked him what he was doing there. He replied that he was going to his car. At this time, Windeler noticed a mark on Howard's shirt that she thought might be a bulletproof vest. Windeler then reached out to feel whether Howard might

be wearing a bulletproof vest.  Based upon what she felt, Windeler concluded that Howard was wearing a bulletproof vest, which she believed was a violation of Ohio's criminal tools law. Windeler then grabbed Howard's arms, put them behind his back, and had her partner handcuff Howard.  Windeler then patted down Howard and found a loaded 9mm semi-automatic handgun.

Before further investigation could be completed, the officers heard a gunshot and glass breaking near their position.  They put Howard in the car and left the area.  The officers then read Howard his Miranda warnings, after which Howard admitted possessing the weapon.  According to Officer Windeler, the entire encounter lasted only a few seconds.

After the arrest, the officers telephoned the 911 complainant who had reported the break-in. The complainant informed police that he/she realized that the car had not actually been broken into. This information was included in Officer Matthew Martin's report of the incident, which was based on his interview with Officer Windeler.

**B. Procedural History**

Defendant Angelo Howard was indicted on June 4, 2003 and charged with one count of being a felon in possession of a firearm.  Defendant subsequently moved to suppress the evidence obtained from the stop and arrest.  The district court conducted a hearing on August 11, 2003, at which Officer Windeler testified.  The court orally denied the motion, later issuing a written opinion denying the motion.  That same day, the district court held a stipulated bench trial and adjudged Defendant guilty of being a felon in possession of a firearm.

In the Probation Department's initial pre-sentence report, it was revealed for the first time to defense counsel that the 911 report had falsely reported that the car was broken into.  Based on this new information, Defendant moved the court to reconsider its motion to suppress.  Additionally,

3

the court conducted a Jencks hearing on February 23, 2004 to determine whether the Government had violated the Jencks Act by failing to produce Officer Windeler's statement regarding the false 911 report.

At the hearing, Officer Martin testified that he had written his report based on a face-to-face meeting with Officer Windeler. As Officer Windeler provided the information, Officer Martin wrote the information into his notes. Officer Martin then had Officer Windeler again go through the story as he followed in his notes. Officer Martin then wrote his report based on the notes from the interview. Officer Martin further testified that the report was a substantially verbatim report of Officer Windeler's statement, but that Officer Martin did not show his report to Officer Windeler for her review.

On April 15, 2004, the district court issued an order denying Defendant's Motion to Reconsider the Motion to Suppress and denying Defendant's challenge under the Jencks Act. Howard was sentenced on August 23, 2004. These appeals followed.

## II. ANALYSIS

### A. Whether the Government Failed to Establish Reasonable Suspicion

Appellant asserts that the district court erred in holding that the officers had reasonable suspicion to stop Howard. Appellant argues that the information provided in the 911 call did not match Howard, and that the officers could not point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants" a belief that criminal activity was afoot. *See* Appellant's Brief, at 13 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). We disagree.

4

In reviewing a district court's determinations on suppression questions, this Court accepts a district court's factual findings unless they are clearly erroneous. *See United States v. Thomas*, 11 F.3d 620 (6th Cir. 1993). We review *de novo* the district court's application of the law to the facts. *See id.*

In determining the reasonableness of a stop and/or arrest, a court must consider the "totality of the circumstances." *See Illinois v. Gates*, 462 U.S. 213 (1983). Furthermore, when police action is based on a tip from an informant, the court must consider the veracity and credibility of the informant. *See United States v. White*, 496 U.S. 325, 328 (1990).

Appellant argues that the present case is similar to the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000). In *Florida v. J.L*, police received a tip from an unknown informant that a young black male was standing at a particular bus stop, wearing a plaid shirt, and carrying a gun. Police responded to the scene, saw a young black male wearing a plaid shirt and proceeded to make a *Terry* stop. The Court concluded that the police had no reasonable suspicion to conduct the *Terry* stop based on the minimal amount of information provided to police and the informant's failure to predict future actions of the suspect. Based on the low level of corroboration, the Court distinguished the facts of *Florida v. J.L.* from the facts of *United States v. White*, where the Court found reasonable suspicion based on detailed information from an anonymous tip.

The facts in the present case are easily distinguished from *Florida v. J.L.* First, the tip in the present case was not anonymous. It is true that the investigating officers did not know the informant, but the informant left his/her name and number with the 911 dispatcher. Following the arrest, Officer Windeler used that contact information and contacted the informant. Based on the police's ability to contact the informant, there was a higher level of trustworthiness in the present

case than in those cases where the informant was purely anonymous.

Second, the officers' stop and arrest of Defendant in the present case were not solely based on the 911 call. When the officers arrived on the scene, a dark parking lot late at night, they saw a heavy black male in his twenties. This matched the information the officers were provided from the 911 call, and when the officers arrived on the scene, they observed Howard reach for his pockets. Based on the circumstances, it was justifiable for Officer Windeler to order Howard to keep his hands out of his pockets and to further investigate. As Officer Windeler approached Howard, she observed what she believed to be a bulletproof vest under Howard's shirt. This new fact justifiably aroused Officer Windeler's suspicion and raised new concerns for her safety. Based on this new detail, Officer Windeler further investigated by feeling Howard's clothing. This very limited search of Howard's person confirmed Officer Windeler's suspicion and she concluded that Howard was wearing a bulletproof vest. This additional fact justified Officer Windeler's handcuffing Howard and patting him down for weapons. As a result of the pat-down, Officer Windeler discovered a concealed firearm, thereby giving her probable cause to arrest Howard, which she then did.

At all times during the stop, Officer Windeler limited her investigation to that which was necessary to alleviate her suspicions. *See Hiibel v. Sixth Judicial District Court*, 542 U.S. 177 (2004). We find that Officer Windeler's investigation was reasonable under the circumstances and in compliance with the requirements of *Terry v. Ohio* and its progeny. Accordingly, we affirm the district court's denial of Defendant's Motion to Suppress Evidence.

**B. Whether the Government Violated the Jencks Act**

Appellant's second argument is that the Government violated the Jencks Act by failing to disclose to Defendant the written report containing Officer Windeler's statement. The Jencks Act,

6

18 U.S.C. §3500, requires the government to turn over a statement of a witness after the witness has testified on direct examination. A "statement" includes a writing that is a "substantially verbatim" recitation of the witnesses' statement which was made "contemporaneously" to the statement. *See Palermo v. United States*, 360 U.S. 343 (1959).

At the Jencks hearing, Officer Martin testified that his report was based on his notes from his interview with Officer Windeler, and that his notes were substantially verbatim to Officer Windeler's statement. For these reasons, Appellant argues that Officer Martin's report should have been disclosed to Defendant pursuant to the Jencks Act. We disagree.

In *United States v. Farley*, 2 F.3d 645 (6th Cir. 1993), this Court explained this Circuit's "Adoption Test," which is used to determine whether a statement must be produced under the Jencks Act. Under the adoption test, "a government report or notes of a witness' statement must be produced 'if the notes from the interview were read back to and verified by the witness and if the report summarized the notes without material variation.'" *Id*. at 654. At the Jencks hearing, Officer Martin testified that Officer Windeler never saw Officer Martin's notes. *See* Jencks Hearing, at 30-31; J.A. 119-20.

Because Officer Windeler never adopted the statements in either Officer Martin's notes or in his report, there was no Jencks Act violation. Accordingly, we affirm the district court's finding that there was no Jencks Act violation.

**C. Whether the District Court Failed to Comply With the Sentencing Guidelines**

Following Defendant Angelo Howard's conviction, the Unites States Probation Officer for the case prepared a pre-sentence report and concluded that Howard had committed a controlled-substance offense and a "crime of violence" for purposes of sentencing under U.S.S.G. §

7

2K2.1(a)(2) and set the base offense level at 24. The "crime of violence" found by the Probation Officer was Howard's prior felony conviction for Failure to Comply with an Order or Signal of Police Officer. Howard's prior conviction was the result of fleeing from the police in his car through a crowded neighborhood.

After reviewing the pre-sentence report, the district court ruled that Howard's prior conviction was not a "crime of violence" under the Sentencing Guidelines. Accordingly, the court reduced Howard's offense level from 24 to 20. The court's finding also reduced Howard's potential sentence from 84 to 105 months to 51 to 63 months. Based on these reductions, the district court sentenced Howard to 51 months in prison.

By its cross-appeal, the Government appeals the district court's sentence of Howard and argues that it was error for the court to find that Howard's prior felony conviction was not a "crime of violence" under the Sentencing Guidelines. A crime of violence under U.S.S.G. §4B1.2 includes any offense punishable by imprisonment of more than one year which involves conduct that presents a "serious potential risk of physical injury to another." The Government argues that Howard's prior conviction under Ohio law for using a motor vehicle to flee police, thereby causing a substantial risk of physical harm to persons or property, was such a "crime of violence."

In response, Defendant argues that the district court's sentence in the present case was reasonable and that that is all that is required under *United States v. Booker*, 160 L.Ed. 2d 621 (2005). Defendant also asserts that the district court did not err in concluding that Howard's prior offense was not a "crime of violence" because Howard's offense as stated in the indictment was for the operation of a motor vehicle causing a substantial risk of serious physical harm to persons *or property*. Because Howard's offense may have only involved a risk of harm to property (and not

8

persons), Defendant argues that the district court correctly concluded that it was not a "crime of violence" under the Sentencing Guidelines.

This Court previously addressed this issue in *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004). In *Martin*, the Court explained that if the statute of conviction includes both violent and non-violent conduct, it is permissible for the Court to look to the indictment or jury instructions to determine whether the defendant's specific conduct included a crime of violence. *Id.* at 581. Additionally, the panel in *Martin* concluded that when a motorist flees the police, there is a potential risk of injury to pedestrians and others on the road, and that such an offense is a "crime of violence" under the Sentencing Guidelines. *Id.* at 583.

*Martin* was decided on July 29, 2004, and though defense counsel brought *Martin* to the district court's attention at the August 5, 2004 sentencing hearing, the district court stated at sentencing that it had not yet had an opportunity to read the opinion. J.A. 125. We believe that *Martin's* holding is applicable in the present case and that the district court should have found that Howard's offense was a "crime of violence." Though the Sentencing Guidelines are no longer mandatory in light of *United States v. Booker*, district courts must nevertheless properly calculate the offense level under the Guidelines before determining whether to apply the Guidelines-established sentence in a particular case. Because the district court erred in concluding that Howard did not commit a "crime of violence," the court improperly reduced Howard's offense level. For these reasons, we reverse the district court's sentence and remand for re-sentencing.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of Defendant's Motion to Suppress Evidence and **AFFIRM** the district court's finding that there was no Jencks Act violation.  Lastly, we **REVERSE** the district court's sentence and **REMAND** for re-sentencing.