NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0206n.06

Case No. 24-1409

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 17, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| RAPHAEL JERMAINE WILLIAMS, JR., | ) | |
| Defendant - Appellee. | ) | OPINION |
| | ) | |

Before: COLE, McKEAGUE and RITZ, Circuit Judges.

**RITZ, Circuit Judge.**

A grand jury indicted Raphael Williams for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Williams moved to dismiss the indictment, arguing that the prosecution violated his Second Amendment rights, and the district court granted the motion. But because Williams's criminal history demonstrates dangerousness, his § 922(g)(1) charge was consistent with the Second Amendment as interpreted in this court's recent decisions in *United States v. Erick Williams*, 113 F.4th 637 (6th Cir. 2024), and *United States v. Goins*, 118 F.4th 794 (6th Cir. 2024). We reverse and remand.

**BACKGROUND**

In April 2022, Raphael Williams was convicted of several felonies under Michigan law, including receiving and concealing a stolen motor vehicle; fleeing and eluding a police officer; malicious destruction of police property; and assaulting, resisting, or obstructing a police officer. This was not Williams's first run-in with the law; he also had a 2018 juvenile adjudication for

unarmed robbery. For the 2022 crimes, Williams was sentenced to 365 days in jail and two years of probation. The terms of his probation included a prohibition on possession of weapons.

While he was serving his two-year term of probation, Williams's social-media posts came to the attention of law enforcement. Several photographs and videos posted to Williams's Instagram account showed him brandishing pistols and AR-style rifles, including at least one firearm that contained a suspected machine-gun conversion device, commonly known as a "switch." In at least one post, Williams appeared to advocate for killing police officers; another appeared to depict him pointing a pistol at a sleeping person's head.

In March 2023, police executed a search warrant at Williams's home. They found an unsecured, loaded Glock .40 caliber pistol in his bedroom, not far from where a small child was sleeping. Williams told officers that the gun was his and that he was the person in the social-media posts. He also told them that the Glock had a "switch."

The government filed a criminal complaint charging Williams with a violation of § 922(g)(1), and a federal grand jury later indicted him. The government sought to detain Williams pending trial, arguing he was dangerous based on, among other things, his social-media posts. The magistrate judge ordered Williams to be detained pending trial. In particular, the judge found: that Williams had made several posts on social media displaying weapons and boasting of being a "shooter" and a "West Side Terrorist"; that the gun in the present case had been found loaded and unsecured "within a few feet of a sleeping infant"; that he had not been in compliance with the terms of his probation; and that, between his prior juvenile adjudication and subsequent felony convictions, he appeared to be "escalating in his unlawful behavior" and posed a danger to society and "his own infant." RE 10, Order of Detention Pending Trial, PageID 99.

Williams moved the court to dismiss the indictment, arguing that § 922(g)(1) was unconstitutional as applied to him under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The district court granted the motion in April 2024, reasoning that the government had failed to demonstrate that § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation, and concluding that § 922(g)(1) was unconstitutional as applied to Williams. In ruling on Williams's motion to dismiss, the district court considered only "the facts alleged in the indictment." RE 41, Opinion, PageID 1463. The government appealed.

## ANALYSIS

### I. Standard of review

We review de novo the district court's grant of Williams's motion because it implicates the constitutionality of a federal statute. *See United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024). Since the district court granted Williams's motion, this court has issued new precedents governing Second Amendment challenges to firearms regulations. We consider the parties' arguments in light of those new precedents.

### II. *Bruen* and intervening circuit precedent

Williams's challenge arises from the Supreme Court's decision in *Bruen*, which required that any regulation on firearm ownership be consistent with our nation's "history and tradition." 597 U.S. at 22; *see also United States v. Rahimi*, 602 U.S. 680, 692 (2024) (holding that, to determine whether a firearm regulation is permissible, courts should consider whether the regulation is "consistent with the principles that underpin our regulatory tradition").

After the district court granted Williams's motion, we held in *United States v. Erick Williams* that § 922(g)(1) is "constitutional on its face and as applied to dangerous people." 113 F.4th at 662-63. *Erick Williams* held that Congress may criminalize firearm possession by

3

dangerous people, so long as those persons have an opportunity to "demonstrate that their particular possession of a weapon pose[s] no danger to peace." *Id.* at 657. Therefore, an individual seeking dismissal of a § 922(g)(1) charge must demonstrate "that he himself is not actually dangerous" to succeed. *Id.* at 663. To determine whether an individual is dangerous, courts are to "make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of [the] specific conviction" underlying the § 922(g)(1) prosecution. *Id.* "[V]iolent crimes are at least strong evidence that an individual is dangerous," although *Erick Williams* cautioned against creating "bright categorical lines" to determine which conduct evinces dangerousness. *Id.* at 658, 660.

Although we did not require a categorial analysis in *Erick Williams*, we pointed out that the commission of certain offenses "will more strongly suggest" an individual's dangerousness. *Id.* at 660. For example, "crimes against the person," like "murder, rape, assault, and robbery" are "violent crimes," and are "at least strong evidence that an individual is dangerous." *Id.* at 658. Other types of crimes, such as burglary or drug trafficking, "do not always involve an immediate and direct threat of violence against a particular person" but "may nonetheless pose a significant threat of danger." *Id.* at 659. Finally, convictions for crimes that "cause no physical harm to another person or the community" may not make a person dangerous. *Id.* As to the first two types of crimes, *Erick Williams* explained that "[a]n individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous," *id.* at 663, while the kinds of crimes falling into the third category do not necessarily "make a person dangerous." *Id.* at 659.

We emphasized in *Erick Williams* that the inquiry should take into account "a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction"— including his "past convictions in the record, as well as other judicially noticeable information."

4

*Id.* at 659-60. *Erick Williams* stated that prior convictions may be accepted "without an evidentiary hearing or jury fact finding" and that a presentence report whose contents have not been objected to can also be so considered. *Id.* at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228-39 (1998)). We also recognized that "courts may wish to consider information beyond criminal convictions," such as a civil restraining order, but left open the question of what information is "relevant." *Id.* at 658 n.12. *Erick Williams* ultimately rejected the defendant's facial challenge to § 922(g)(1), as well as his as-applied challenge, reasoning that the defendant's prior convictions for violent crimes made him a dangerous person. *Id.* at 657, 662.

Our court further interpreted *Erick Williams*'s reasoning in *United States v. Goins*, where we held that § 922(g)(1) was constitutional as applied to a defendant who had violated the terms of his state probation. 118 F.4th at 805. *Goins* also stated that "[t]he historical record demonstrates a longstanding and specific tradition of temporarily *disarming* persons who had engaged in dangerous conduct as a consequence of that dangerous conduct." *Id.* at 798.

### III.     Application of *Erick Williams* and *Goins*

The government argues that we should reverse the district court's dismissal of the indictment because § 922(g)(1) is constitutional as applied to Williams. We agree.

#### A.       Williams's dangerousness

*Erick Williams* makes clear that, "in an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not dangerous." 113 F.4th at 662. Also, certain crimes against the person (including, as relevant to the present case, assault) "speak directly to whether an individual is dangerous." *Id.* at 658. In fact, "in many instances[, such as] assaults . . . , the dangerousness will be self-evident." *Id.* at 660. Moreover, *Erick Williams* noted that another class of crimes, although they "do not always involve an immediate and direct threat of violence against

5

a particular person," may nevertheless "lead[] to" or "create[] the possibility of" violence and thus "put someone's safety at risk [and] justify a finding of danger." *Id.* at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)).

Williams's 2022 convictions fit within this framework. Williams pled guilty to the felonies of receiving and concealing a stolen motor vehicle, fleeing and eluding a police officer (third degree), malicious destruction of police property, and assaulting, resisting, or obstructing a police officer. The felony of assaulting, resisting, or obstructing a police officer is the precise type of crime against the person that the *Erick Williams* decision contemplated would be a "self-evident" display of dangerousness. 113 F.4th at 660. Indeed, Michigan categorizes the crime of assaulting or obstructing a police officer as a crime against a person. Mich. Comp. Laws §§ 777.5, 777.16d. And Michigan law categorizes fleeing and eluding (third degree) as a crime against public safety. Mich Comp. Laws §§ 777.5, 777.12e. For example, we have previously noted, in the context of deciding whether fleeing and eluding constituted a "crime of violence," that "[w]hen a motorist disobeys an officer and flees in his car[,] . . . that person creates a conspicuous risk of injury to" others sharing the road, as well as passengers and the officer. *United States v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004). Fleeing and eluding, therefore, can properly be considered as falling into the second category of offenses that may make a person dangerous under *Erick Williams*. *See* 113 F.4th at 659 ("[M]ost of these crimes put someone's safety at risk, and thus, justify a finding of danger.").

Williams's primary response is that *Erick Williams* was wrongly decided and should not be followed. But *Erick Williams* is controlling precedent and remains so unless this court sitting en banc overrules it or a Supreme Court decision modifies it. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of

6

another panel."); *see also United States v. Ronald Norvale Williams*, No. 24-1244, 2025 WL 1089531, at *1 (6th Cir. Apr. 11, 2025). We must apply *Erick Williams*, and the rationale of that case supports a finding that Williams is dangerous.

Williams also argues that he is just 21 years old and that his youth is relevant to determining his dangerousness. He cites *Jones v. Mississippi*, 593 U.S. 98, 105 (2021), as well as three scientific studies about how one's brain continues to develop until the age of 25. *Id.* at 22-23. But *Jones* is a case about how youthfulness is a factor that may warrant leniency at sentencing—not about how to assess whether a defendant is dangerous for purposes of § 922(g)(1). And Williams does not show how the scientific studies he cites are applicable to his individual circumstances. *Erick Williams* was clear that a court "must focus on each individual's *specific* characteristics." 113 F.4th at 657 (emphasis added). We are not convinced that Williams's youth alone can overcome a determination that he is dangerous.

## B. Williams's probationary status

*Erick Williams* is not the only case to support a finding that Williams is dangerous. *Goins* considered whether § 922(g)(1) was constitutional as applied to a defendant who had violated the terms of his state probation. In holding that it was, we relied on three key facts. First, we reasoned that the defendant was in violation of a probation condition "prohibit[ing] him from possessing a firearm at the time he did so." 118 F.4th at 797. Second, the state probation sentence was "relatively short" and was for a dangerous crime. *Id.* Finally, the defendant's "repeated actions" demonstrated that he was likely to engage in dangerous conduct in the future. *Id.*

*Goins* stated that although "those on probation . . . may not permanently lose their Second Amendment right, a temporary deprivation that supports the state's interest in reducing recidivism and protecting the public may be appropriate and comport with this nation's tradition of historical

7

firearm regulations." *Id.* at 804. As applied to Goins, specifically, we noted his past convictions, which included five charges in an eight-year period for driving under the influence, for which he was convicted of four. *Id.* His actions included "causing a motor vehicle accident," which "pose[d] a danger to public safety." *Id.* But the "most important[]" factor was that, at the time the defendant possessed the firearm, "he was in violation of a condition of his four-year state probation term." *Id.*; *see also Ronald Norvale Williams*, 2025 WL 1089531, at *2 (concluding that defendant's "parolee status—and the condition that he not possess a firearm—combined with his prior felony murder convictions support" finding that he was dangerous (citing *Goins*, 118 F.4th at 804-05)); *United States v. Taylor*, No. 23-5644, 2024 WL 4891756, at *2 (6th Cir. Nov. 25, 2024) (per curiam) (rejecting Second Amendment as-applied challenge to a § 922(g)(1) conviction because, "[l]ike the defendant in *Goins*, Taylor was also on probation when he possessed firearms in violation of § 922(g)(1)").

The three key factors in *Goins* exist in this case. First, when he was arrested in 2023, Williams was in violation of a probation condition prohibiting him from possessing a firearm. His state probation was related to dangerous crimes against persons and public safety, and the probationary sentence of two years was even shorter than in *Goins*. True, Williams's criminal history is not as extensive as that of the defendant in *Goins*, but Williams pled guilty to four state felonies less than a year before his arrest in the present case. And as the magistrate judge noted in ordering Williams to be detained pending trial, his behavior showed an escalation of criminal activity.

Williams argues that we should not follow *Goins* because the case relies on "faulty analysis." CA6 R. 18, Appellee's Br., at 23. But *Goins* is controlling precedent in our circuit, just

as *Erick Williams* is, and we are not at liberty to disregard it. Under *Goins*, Williams's violation of his probation condition lends further support to the constitutionality of disarming him.

### C. Other factors

In addition to Williams's 2022 felonies and the fact that he was on probation when he possessed a firearm, the government argues that two additional factors support a finding of dangerousness: (1) the circumstances of the alleged § 922(g)(1) offense conduct and (2) Williams's 2018 juvenile adjudication for robbery. In a recent, albeit unpublished, decision, we considered both the offense conduct that triggered the § 922(g)(1) charge, as well as the defendant's prior convictions in determining the defendant's dangerousness. *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025).

In Williams's case, however, we need not consider or analyze these factors. Williams's 2022 felonies and the fact that he violated a probation condition prohibiting him from having a firearm when he was charged in this case are sufficient to find that he is dangerous under *Erick Williams* and *Goins*. *See, e.g.*, *Erick Williams*, 113 F.4th at 662 (concluding that a past felony conviction for aggravated robbery, a crime against a person, "alone is sufficient to conclude that Williams, if armed, presents a danger to others or the public").

### CONCLUSION

In sum, we hold that § 922(g)(1) is constitutional both facially and as applied to Williams. Williams argues that we should remand with instructions for the district court to analyze this case under *Erick Williams* in the first instance. But there is no need for us to remand for that purpose, because Williams's record "demonstrates dangerousness," including having committed a crime against a person. *Morton*, 123 F.4th at 500; *see also Ronald Norvale Williams*, 2025 WL 1089531,

9

at *2-3 (reversing district court's order dismissing indictment and declining to remand to district court for an "individualized dangerousness analysis" where there was "sufficient evidence in the record demonstrating that [defendant] could be disarmed under § 922(g)(1)"); *United States v. Henson*, No. 24-3494, 2025 WL 1009666, at *7 (6th Cir. Apr. 3, 2025) (declining to remand where the district court did not have the benefit of *Erick Williams* in making its initial determination); *Fordham*, 2025 WL 318229, at *5 (same).

We reverse the district court's dismissal of the indictment and remand this case for further proceedings consistent with this opinion.