NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0236n.06

Case No. 25-6002

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
| QUANTAVIOUS O'BANNON, | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |
|  | ) | |

**FILED**

May 27, 2026
KELLY L. STEPHENS, Clerk

Before: WHITE, THAPAR, and MATHIS, Circuit Judges.

THAPAR, Circuit Judge. Quantavious O'Bannon was convicted of illegally possessing a firearm as a felon. He argues that conviction violates his rights under the Second Amendment. But his repeat felony convictions show that he's a dangerous person whom Congress may permissibly disarm. So we affirm.

I.

In 2024, Quantavious O'Bannon had an outstanding arrest warrant for fleeing and evading police, receiving stolen property, and reckless driving. When local police officers eventually located and arrested O'Bannon, they searched him and discovered a loaded handgun with an "extended magazine" and 21 rounds of ammunition. R. 16-1, Pg. ID 48.

O'Bannon had previously been convicted of multiple felonies, including fleeing and evading, escape, receiving stolen property, and burglary. So a federal grand jury indicted O'Bannon for possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1).

O'Bannon moved to dismiss the indictment, arguing that the federal statute prohibiting him from owning a gun was unconstitutional as applied to him. The district court denied his motion, concluding that O'Bannon was a "dangerous" individual whom Congress could constitutionally disarm. R. 24, Pg. ID 90. At that point, O'Bannon pled guilty, but he reserved his right to appeal the denial of his motion to dismiss. The district court sentenced O'Bannon to 34 months' imprisonment to be followed by three years of supervised release. O'Bannon timely appealed.

II.

O'Bannon argues that 18 U.S.C. § 922(g)(1) can't constitutionally be applied to him because he "has no convictions for violent conduct, for intentionally endangering or harming others, or for any firearm-related offenses." Appellant's Br. at 3. We review the district court's legal conclusion that § 922(g)(1) is constitutional as applied to O'Bannon de novo. *See United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003).

Under the Second Amendment, "Congress may disarm individuals they believe are dangerous." *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). So to prevail on an as-applied challenge to § 922(g)(1), a defendant must demonstrate that he isn't a "dangerous" individual. *Id.* We assess whether a defendant is dangerous by examining his entire criminal record for conduct that endangers the public, the police, or the offender. *Id.* at 657–59. Some categories of predicate offenses are all but "totally dispositive" of a defendant's dangerousness. *Id.* at 658. These presumptively dangerous offenses include (1) crimes "against the body of another human being," like murder or rape, and (2) crimes that "inherently pose[] a significant threat of danger," like drug trafficking and burglary. *Id.* at 663 (quotation omitted). Aside from those categorically dangerous offenses, other crimes may still support a finding of dangerousness

if they cause "harm to another person or the community." *Id.* at 659. The unifying feature of these three categories: Crimes that threaten the safety of others justify a finding of dangerousness.

One crime that endangers others is fleeing and evading arrest, especially in a car. *See United States v. Williams*, No. 24-1409, 2025 WL 1136326, at *3 (6th Cir. Apr. 17, 2025). When a motorist "disobeys an officer and flees in his car," he produces a "conspicuous potential risk of injury" to the officer, other drivers, pedestrians, and his own passengers. *United States v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004). The decision to flee during a traffic stop magnifies the existing risk to officers by necessitating a dangerous chase and ultimately "provok[ing] an inevitable, escalated confrontation." *Id.* at 582; *Barnes v. Felix*, 605 U.S. 73, 84 (2025) (Kavanaugh, J., concurring) (noting the special danger to officers when "the driver pulls away in the midst of the stop"). Because of that risk of physical injury, we have already classified this offense as a "crime of violence" for sentencing purposes. *Martin*, 378 F.3d at 583. It therefore falls neatly within *Williams*'s second category of crimes that justify disarming a defendant.

Where do O'Bannon's convictions stack up? Several of them follow a pattern: O'Bannon got caught in cars that weren't his, then tried—and failed—to evade police. Most seriously, in 2019, O'Bannon led police on a chase in a stolen car. He came "inches away" from hitting a pedestrian, side-swiped another car, and caused a patrol car to crash. R. 16-3, Pg. ID 55. When he finally stopped the car, O'Bannon fled across a street on foot and then hopped a fence. O'Bannon's flight "put[] officers in harm['']s way with traffic" and caused one officer who followed O'Bannon over the fence to injure himself. *Id.* The incident led to O'Bannon's first conviction for first-degree fleeing and evading.

But that conviction didn't deter O'Bannon. A year later, officers found O'Bannon behind the wheel of another stolen car. He fled from officers, ignored commands to stop, crossed a "high-

traffic road," and created "a substantial risk of serious physical injury." R. 16-11, Pg. ID 70. Next, police discovered O'Bannon driving a stolen vehicle without a license. A few months later, officers caught O'Bannon after he broke into yet another car. He once again fled from officers, even though he was handcuffed. Later that month, O'Bannon burglarized a woman's apartment, stole her car keys, and then used them to break into her car. Finally, less than two months later, officers observed O'Bannon hit another car while driving a stolen vehicle. O'Bannon then fled on foot, crossing a street and "putting his life and others in danger." R. 16-7, Pg. ID 64. All told, O'Bannon has racked up three felony convictions for first-degree fleeing and evading, as well as felony convictions for third-degree burglary and second-degree escape.

O'Bannon's convictions for fleeing and evading officers are inherently dangerous offenses under *Williams*. Under Kentucky law, these convictions required the government to show that O'Bannon caused "serious physical injury or death to any person or property" while fleeing on foot or caused or created a "substantial risk" of the same while doing so by car. Ky. Rev. Stat. Ann. § 520.095(1). O'Bannon's conduct undoubtedly meets this bar. His decision to flee led to officers nearly being "struck by a moving vehicle," brought O'Bannon "inches" away from hitting a pedestrian, and damaged a patrol car and another vehicle. R. 33, Pg. ID 123; R. 16, Pg. ID 44. Because this conduct endangered law enforcement, the public, and O'Bannon himself, O'Bannon may be disarmed consistent with the Second Amendment.

\*     \*     \*

We affirm.