In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1693

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY DISMUKE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 CR 81—**Lynn Adelman**, *Judge.*

ARGUED JANUARY 6, 2009—DECIDED JANUARY 27, 2010

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Anthony Dismuke was convicted by a jury of being a felon in possession of a firearm and sentenced to a statutorily mandated 15-year prison term based on three prior convictions the district court deemed to be "violent felonies" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). On appeal he challenges both his conviction and his sentence.

Dismuke has a lengthy felony record and was found in possession of two handguns during a search of his

home pursuant to a state-issued warrant. He moved to suppress the guns, but the district court denied the motion. On appeal Dismuke reiterates his claim that the guns were inadmissible because the affidavit submitted in support of the warrant application lacked sufficient corroboration of information supplied by a confidential informant. We disagree. Deferring as we must to the decision of the judge who issued the warrant, *see United States v. McIntire*, 516 F.3d 576, 577-78 (7th Cir. 2008), we conclude that the affidavit contained enough independent corroboration to support probable cause to search Dismuke's home. And even if it did not, there is no reason to believe that the warrant-issuing judge abandoned his neutrality or that the police did not act in good faith. Accordingly, the guns were properly admitted at trial and Dismuke's conviction is affirmed.

Dismuke also challenges his sentence, arguing that under the Supreme Court's decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), his Wisconsin felony conviction for vehicular fleeing is not a "violent felony" under the ACCA and therefore should not have counted toward the three convictions necessary to subject him to the 15-year mandatory minimum sentence. We disagree with this contention as well. Applying *Begay* and reading our early post-*Begay* decision in *United States v. Spells*, 537 F.3d 743 (7th Cir. 2008), in light of the Supreme Court's later decision in *Chambers v. United States*, 129 S. Ct. 687 (2009), we conclude that Wisconsin's vehicular-fleeing offense qualifies as a violent felony under the ACCA.

## I. Background

On January 28, 2007, Milwaukee Police Officer Anthony Randazzo applied for a warrant to search the home of Anthony Dismuke for evidence of illegal fire-arms possession. The affidavit Randazzo submitted in support of the application relied primarily on informa-tion the officer had received from a confidential infor-mant. The affidavit, however, provided no information about the informant other than the officer's assertion that he was "reliable."

Randazzo began his affidavit with the customary expla-nation of his law-enforcement experience: He was a 15-year veteran of the Milwaukee Police Department and had extensive training and experience working on firearms investigations and with confidential infor-mants. He then related the following information about Dismuke: On January 27, 2007, Randazzo was contacted by a "reliable" confidential informant who reported that Dismuke, a felon, was in possession of "at least three firearms." More specifically, the informant told Randazzo that Dismuke lived at 2528 W. Locust Street in Milwaukee and that within the last week, the informant had seen Dismuke at his Locust Street home in possession of a shotgun and two handguns. Randazzo asked the informant if he could identify Dismuke from a photo-graph and the informant did so. Randazzo also verified that the informant could distinguish between different types of firearms.

Randazzo then consulted court records and confirmed that Dismuke had prior felony convictions; the affidavit

listed the offenses, case numbers, and dates of several of the convictions. Randazzo also checked the Wisconsin Department of Transportation driver's license database, which confirmed that Dismuke lived at the address provided by the informant. Randazzo then went to the Locust Street residence and located an automobile registered to Dismuke parked behind the house. Finally, the affidavit provided a description of the house, explained the need to keep the informant's identity confidential, and requested no-knock authorization.

A Milwaukee County Court Commissioner reviewed Randazzo's affidavit that same day, found probable cause, and issued a warrant to search Dismuke's home for evidence of unlawful possession of firearms. Officers executed the warrant the next day and recovered two handguns, ammunition, and documents identifying the residence as Dismuke's. The case was referred to federal authorities, and Dismuke was indicted for possessing firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence from the search, arguing that Randazzo's affidavit was insufficient to support probable cause. The district court denied the motion. The court concluded first that there was probable cause to support the issuance of the warrant, and in the alternative, the search was saved by the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984).

Dismuke was convicted following a jury trial, and his presentence report ("PSR") recommended that he be sentenced as an armed career criminal, *see* 18 U.S.C.

§ 924(e), based on three Wisconsin convictions that qualified as "violent felonies" under the ACCA. The three convictions were: (1) armed robbery; (2) burglary; and (3) vehicular fleeing from an officer. Dismuke objected to the PSR's conclusion that his conviction for fleeing was a violent felony. The district court adopted the PSR's recommendation, found that Dismuke had three violent-felony convictions, and imposed the ACCA's mandatory minimum sentence of 15 years.

## II. Discussion

### A. Search Warrant

Dismuke first challenges the district court's denial of his suppression motion. He argues that Randazzo's affidavit provided too little corroboration of the information from the confidential informant and was therefore insufficient to establish probable cause to search his home. Because Dismuke contests the sufficiency of the warrant affidavit, the question for us is not whether the district court got the probable-cause question right but whether the warrant-issuing judge did. "On *that* issue we must afford great deference to the issuing judge's conclusion." *McIntire*, 516 F.3d at 578 (internal quotation marks omitted). We will uphold a finding of probable cause to search "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960) (alteration in original)).

Probable cause is a common-sense, nontechnical inquiry, and an affidavit submitted in support of a search-warrant application will be sufficient to support a probable-cause finding if, "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). Even if we conclude that the affidavit is insufficient to establish probable cause, the evidence obtained in the execution of the warrant need not be suppressed if the police relied on the warrant in good faith. *See Leon*, 468 U.S. at 920-21. An officer's decision to seek a warrant is prima facie evidence that the officer was acting in good faith. *United States v. Watts*, 535 F.3d 650, 657 (7th Cir. 2008). The good-faith exception thus applies unless the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or the warrant-issuing judge "wholly abandoned" his neutral judicial role and "serve[d] merely as a rubber stamp for the police*." Leon*, 468 U.S. at 923.

Where, as here, the affidavit submitted in support of a search warrant relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge. *See United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). Several factors inform the analysis, including: (1) the degree of police corroboration of the informant's information; (2) the extent to which the information is based on the informant's personal observations; (3) the amount of detail provided

by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge to present the affidavit or testimony. *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002). "[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) (citing *Gates*, 462 U.S. at 233).

A complication here is that Randazzo's affidavit described the confidential informant as "reliable" without offering any explanation for that assertion. We have held that a wholly conclusory statement about an informant's reliability is entitled to no weight; "information obtained from a reliable source must be treated as information obtained from an informant of unknown reliability." *Koerth*, 312 F.3d at 867 (internal quotation marks omitted). But an informant's "unknown reliability" is not necessarily fatal to the probable-cause determination; there may be a sufficient basis to sustain the probable-cause finding under the totality of the circumstances. *See Gates*, 462 U.S. at 237-38. "Statements from an informant of unknown reliability may in certain instances serve to establish probable cause if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence." *Koerth*, 312 F.3d at 867-68 (citing *Gates*, 462 U.S. at 238). In this situation, the extent to which the police have corroborated the informant's information—always an important factor—is key. *Id.* at 868.

We see this as a close case. Randazzo's affidavit estab-lishes that the informant's information was current and based on personal observation, but the level of detail and corroboration are not well-developed. The informant told Randazzo that he had personally and recently seen Dismuke in possession of three guns in his home; he provided an exact address; and he described the guns as a shotgun and two pistols. These basic details provide at least *some* indicia of reliability. But the affidavit gave the warrant-issuing court commissioner no additional particularized facts about the informant's observations. For instance, it offered no explanation about the circumstances surrounding the informant's observations—no explanation, for example, of how the informant knew Dismuke, why he was with Dismuke at his residence, or where the guns were in the house.

Randazzo did make some effort to corroborate the informant's information. He asked the informant to identify Dismuke from a photograph, and the informant correctly did so. He confirmed that the informant knew the difference between semiautomatic weapons, revolvers, rifles, and shotguns. He confirmed through driver's license records that the address the informant had pro-vided was indeed Dismuke's. And when he went to the house and saw a car parked in the rear, he traced the plate and confirmed that the car listed to Dismuke. He also confirmed through court records that Dismuke was a convicted felon.

Confirming the informant's basic knowledge of firearms made the information he provided marginally

more reliable. But Randazzo's other efforts corroborated only Dismuke's identity and the fact that the informant had correctly identified Dismuke's residence. Accuracy on these innocent facts is important but does not directly bolster the informant's claim that Dismuke illegally possessed guns at his home. Still, considering the circumstances in their totality and giving "great deference" to the court commissioner who issued the warrant, we conclude that Randazzo's affidavit was sufficient to support the probable-cause finding.

The totality of the circumstances before the commissioner included the fact that the informant had contacted Randazzo and reported that he personally observed Dismuke at his home in possession of three specific firearms—a shotgun and two pistols—within the last week. The informant was able to distinguish between different types of firearms and correctly identified Dismuke's photo. The address he said was Dismuke's checked out. Although Randazzo did not identify the informant or bring him before the court commissioner for live testimony, the informant did subject himself to prosecution for making false statements to law enforcement by coming to Randazzo with information about Dismuke. In all, we think the affidavit is sufficient, albeit just barely, to sustain the court commissioner's issuance of the search warrant.

In any event, under the good-faith exception, the suppression of the fruits of the search would not be appropriate in a close case like this one. This is not a case where the probable-cause determination rested on little

more than a "bare-bones" affidavit or entirely conclusory allegations. *See United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008). Even if we were to conclude that the affidavit was insufficient to establish probable cause, we could not say that it was "so plainly deficient that any reasonably well-trained officer 'would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Koerth*, 312 F.3d at 869 (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)); *see also Watts*, 535 F.3d at 657. Nor is there any evidence to suggest that the warrant-issuing court commissioner abandoned his neutral judicial role. Accordingly, we affirm Dismuke's conviction for possession of a firearm by a felon.[1]

---

[1] Dismuke also argues he was entitled to a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). This requires a "substantial preliminary showing" that (1) the affidavit contained materially inaccurate information; and (2) the police knew the information in the affidavit was false or acted in reckless disregard of its truth. *United States v. Amerson*, 185 F.3d 676, 688 (7th Cir. 1999). Dismuke has not come close to making this showing. He has not identified any materially inaccurate or false information in the affidavit. Rather, he argues only that his address listed in the state driver's license records was five years old and the automobile registration on the car behind his home had expired. This is not enough to suggest that the address the informant gave Randazzo was inaccurate or that Randazzo acted in reckless disregard for its accuracy.

**B. Fleeing as a "Violent Felony" after *Begay v. United States***

Dismuke also challenges the district court's decision to classify his Wisconsin conviction for vehicular fleeing an officer as a violent felony under the ACCA. This conviction, when added to his two other violent-felony convictions (for armed robbery and burglary), mandated a minimum 15-year sentence. *See* 18 U.S.C. § 924(e)(1).

*1. General Principles*

The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Wisconsin's fleeing offense is punishable by a prison term of more than one year, *see* WIS. STAT. §§ 346.04(3), 346.17(3), 939.50(3), but it does not have as an element the "use, attempted use, or threatened use of physical force" and therefore does not qualify under subsection (i) of the violent-felony definition. This leaves subsection (ii) of the definition—the "residual clause"—which includes any crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

The Supreme Court has directed us to use a "categorical approach" to determine whether a crime is a violent felony under the ACCA's residual clause. *See, e.g., United States v. Woods*, 576 F.3d 400, 403-05 (7th Cir. 2009). The categorical approach requires that we "look only to the fact of conviction and the statutory definition of the prior offense" rather than the "particular facts disclosed by the record of conviction." *Shepard v. United States*, 544 U.S. 13, 17 (2005) (internal quotation marks omitted); *see also Woods*, 576 F.3d at 403. But when the statute in question is divisible—that is, when it describes multiple offense categories, some of which would be crimes of violence and some of which would not—the Court has fashioned a modified categorical approach. *Woods*, 576 F.3d at 404. Under the modified categorical approach, "'we may expand our inquiry into a *limited* range of additional material . . . in order to determine whether the jury actually *convicted* the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony.'" *Id.* (quoting *United States v. Smith*, 544 F.3d 781, 786 (7th Cir. 2008)).

The expanded inquiry is limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26; *see also Smith*, 544 F.3d at 786. This modified categorical approach does not, however, inquire into the factual specifics of the defendant's conduct; the point of the expanded inquiry

is not to consider what the defendant in fact did but to determine which category of crime the defendant committed. *See Woods*, 576 F.3d at 405-06.

### 2. *The Supreme Court's Decision in* Begay

Dismuke argues that his fleeing conviction cannot be classified as a violent felony after the Supreme Court's decision in *Begay*, which was released about a month after he was sentenced.[2] *Begay* addressed the scope of the ACCA's residual clause and interpreted it in a way that narrows its reach. The predicate ACCA conviction at issue in *Begay* was a New Mexico felony conviction for recidivist drunk driving. The Supreme Court assumed that the lower courts were correct in concluding that drunk driving involved conduct that "presents a serious potential risk of physical injury to another" within the meaning of statute. *Begay*, 128 S. Ct. at 1584. The Court focused instead on the statute's list of specifically included crimes—burglary, arson, extortion, and crimes involving the use of explosives—and concluded that the residual clause "covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 1585. In other words, the clause covers only "crimes that are roughly similar, in kind as well as in degree of risk posed,

---

[2] *Begay* applies here because it was decided while this case was pending on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987).

to the examples themselves." *Id.* The Court said the presence of the word "otherwise" after the list of included crimes did not undermine this limiting construction because "otherwise" could "refer to a crime that is similar to the listed examples in some respects but different in others—similar, say, in respect to the degree of risk it produces, but different in respect to the way or manner in which it produces that risk." *Id.* at 1586 (internal quotation marks omitted).

The Court also held that a predicate crime will be "similar in kind" to the enumerated crimes if it involves the same sort of "purposeful, violent, and aggressive" conduct as the enumerated crimes. *Id.* at 1586-87. Because drunk driving is a strict-liability crime, the Court concluded it was "too unlike" the example crimes to be covered by the residual clause of the definition. *Id.* at 1584, 1586-87. Accordingly, the Court held that New Mexico's drunk-driving felony did not qualify as a violent felony under the ACCA. *Id.* at 1588.

### 3. *Wisconsin's Fleeing Offense as a Violent Felony under* Begay

We have previously determined that Wisconsin's vehicular-fleeing offense qualifies as a violent felony under the residual clause. *See United States v. Howze*, 343 F.3d 919, 921-22 (7th Cir. 2003). *Begay*'s alteration of the framework for deciding residual-clause cases requires us to reconsider the matter. We start, as the categorical approach requires, with the statutory definition of the crime:

No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

WIS. STAT. § 346.04(3) (2000).

This statute is divisible in the sense that brings the modified categorical approach into play—that is, it defines more than one category of vehicular fleeing. *See Woods*, 576 F.3d at 411. The first category is fleeing or attempting to elude an officer "by willful or wanton disregard of [the officer's] signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians." WIS. STAT. § 346.04(3). The second is "increas[ing] the speed of the operator's vehicle or extinguish[ing] the lights of the vehicle in an attempt to elude or flee." *Id.*

Because the statute is divisible, we may consult the charging document or other comparable judicial record from the underlying case to determine the specific crime Dismuke committed. *See Woods*, 576 F.3d at 405-06; *Smith*, 544 F.3d at 786. The criminal complaint reflects that Dismuke was charged with committing the second variety of fleeing an officer. The complaint alleged that on March 3, 1998, Dismuke was the operator of a vehicle

and "after having received a visual and audible signal from a marked police vehicle, did increase the speed of his vehicle in an attempt to flee, contrary to Wisconsin Statutes Section[] 346.04(3)."

As we have explained, to qualify as a violent felony under the residual clause after *Begay*, this crime must "involve conduct that presents a serious potential risk of physical injury to another" and must also be "roughly similar, in kind as well as in degree of risk posed, to the example[]" crimes of burglary, arson, extortion, or use of explosives. *Begay*, 128 S. Ct. at 1584-85. The "similar in kind" aspect of this inquiry asks whether the predicate crime encompasses conduct that is similarly "purposeful, violent, and aggressive" to the example crimes. To put it more succinctly, after *Begay*, a residual-clause predicate crime must (1) present a serious potential risk of physical injury similar in degree to the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives; and (2) involve the same or similar kind of "purposeful, violent, and aggressive" conduct as the enumerated crimes.

Dismuke does not contend that Wisconsin's fleeing offense fails the first part of this inquiry. He apparently concedes that the offense involves conduct that presents a serious potential risk of physical injury and is sufficiently  similar to the residual clause's enumerated crimes in respect to the "degree of risk posed" to satisfy

this part of the *Begay* framework.[3] He argues instead that

---

[3] Dismuke's concession is understandable. As we have noted, before *Begay* we held that Wisconsin's fleeing crime is a violent felony under the residual clause and in so doing concluded that the offense involves conduct that presents a serious potential risk of physical injury to another. *Howze*, 343 F.3d at 921-22. Nothing in *Begay* undermines this conclusion. *Begay*'s additional requirement is that the potential risk be similar in degree to the residual clause's enumerated crimes. The Supreme Court has noted that the potential risk associated with the first enumerated crime, burglary, "arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party." *James v. United States*, 550 U.S. 192, 203 (2007) (holding that attempted burglary is a violent felony under the residual clause).

As other circuits have noted, vehicular fleeing involves active defiance of a law-enforcement officer, initiates a pursuit, and typically culminates in a face-to-face confrontation between the officer and the suspect. *See United States v. Young*, 580 F.3d 373, 377-78 (6th Cir. 2009); *United States v. Harrimon*, 568 F.3d 531, 536 (5th Cir. 2009); *United States v. West*, 550 F.3d 952, 969-71 (10th Cir. 2008). The Fifth Circuit has also noted that the rate of injury from vehicular fleeing exceeds the rate of injury from arson, another of the residual clause's enumerated crimes. *Harrimon*, 568 F.3d at 537. Although there is some contrary authority, *see United States v. Tyler*, 580 F.3d 722, 725 (8th Cir. 2009); *United States v. Harrison*, 558 F.3d 1280, 1294 (11th Cir. 2009), we agree with the Fifth, Sixth, and Tenth Circuits that vehicular fleeing presents a potential risk of physical

(continued...)

Wisconsin's fleeing offense is not "similar in kind" to the enumerated crimes because it is not similarly "purposeful, violent, and aggressive." The government responds by invoking *United States v. Spells*, 537 F.3d 743, 751-53 (7th Cir. 2008), an early post-*Begay* decision that classified Indiana's fleeing offense as a violent felony under the residual clause. Wisconsin's fleeing offense is narrower

---

[3] (...continued)
injury similar in degree to the residual clause's enumerated offenses.

In this regard, we think it important to note that one of the two circuits that have held vehicular fleeing is *not* a violent felony after *Begay* addressed a statute defining the offense as flight alone, without any additional requirement of an acceleration in speed, the extinguishment of lights, or any other aggravator. *See Harrison*, 558 F.3d at 1290. The Eleventh Circuit in *Harrison* made it clear that the absence of any requirement of increased speed or reckless driving was important to its assessment of the risk question. *Id.* at 1294 ("[T]he fact that the behavior underlying Florida's willful-fleeing crime, in the ordinary case, involves only a driver who willfully refuses to stop and continues driving on—but without high speed or recklessness—makes it unlikely that the confrontation will escalate into a high-speed chase that threatens pedestrians, other drivers, or the officer."). Wisconsin's fleeing statute requires flight by accelerated speed or extinguishment of vehicle lights in an attempt to elude the officer. We think this offense is sufficiently similar in degree of potential risk to the residual clause's enumerated crimes and therefore satisfies this aspect of *Begay*.

than Indiana's,[4] so it is tempting to simply accept the government's argument and rely on *Spells* as subsuming the question presented here. But in light of an analytical omission we have noted in *Spells* and intervening developments in the caselaw, we think the issue calls for independent consideration.

The first requirement of *Begay*'s "similarity in kind" equation—that the predicate offense be categorically "purposeful"—is easily satisfied here. In *Woods* we held that *Begay*'s "purposeful" requirement focuses on the *mens rea* element of the predicate crime: "[T]he residual clause encompasses only purposeful crimes; crimes with the *mens rea* of recklessness do not fall within its scope." 576 F. 3d at 412-13.

Wisconsin's vehicular-fleeing offense is a purposeful crime. Section 346.04(3) provides: "No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall *knowingly* flee or attempt to elude" the officer. (Emphasis

---

[4] As we have noted, Wisconsin's fleeing statute prohibits two specific types of vehicular fleeing: willful and wanton disregard of the officer's signal in a manner that endangers others, and increasing the speed or extinguishing the lights of the vehicle in an attempt to elude or flee. *See* WIS. STAT. § 346.04(3). The Indiana fleeing statute at issue in *Spells* more broadly prohibited the use of a vehicle to "flee[] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." 537 F.3d at 749.

added.) After this prefatory clause, the statute specifies two alternative modes of fleeing: (1) by "willful or wanton disregard" of the officer's signal "so as to interfere with or endanger" the officer, other vehicles, or pedestrians; and (2) by "increas[ing] the speed of the . . . vehicle or extinguish[ing] the lights of the vehicle in an attempt to elude or flee." WIS. STAT. § 346.04(3). The state courts have interpreted the statute to require that the offender "knowingly flee or attempt to elude" by one or the other of the alternative methods—by willfully or wantonly disregarding the officer's signal in a way that interferes with or endangers others *or* by increasing the speed or extinguishing the lights of the vehicle in an attempt to elude or flee. *See State v. Sterzinger*, 649 N.W.2d 677, 680-81 (Wis. Ct. App. 2002); *see also* WISCONSIN JURY INSTRUCTIONS—CRIMINAL 2630 (2003).

Dismuke maintains that to be "purposeful" under *Begay*, the predicate crime must have "as its purpose" the infliction of physical harm upon another. We disagree. Although all of the crimes enumerated in the residual clause are purposeful crimes (as opposed to crimes with a *mens rea* of recklessness, negligence, or strict-liability crimes), none of them require that the offender act with the specific purpose of inflicting physical harm on another. Dismuke's interpretation would make subsection (ii) of the violent-felony definition redundant. Subsection (i) of the definition covers crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another," § 924(e)(2)(B)(i); this part of the definition already

captures crimes committed with the purpose of inflicting physical harm on another. Wisconsin's fleeing offense requires a "knowing" act of fleeing; this satisfies *Begay*'s "purposeful" requirement.

Before proceeding, we note that on this point the circuits are in agreement. In *Spells*, decided shortly after *Begay*, we addressed Indiana's fleeing statute, which "criminalizes using a vehicle to 'knowingly or intentionally . . . flee[] from a law enforcement officer.'" 537 F.3d at 752. We summarily held that this "knowingly and intentionally" element satisfied *Begay*'s requirement of "purposeful" conduct. *Id.* at 752-53. Other circuits have addressed fleeing statutes with similar *mens rea* requirements and are uniformly in accord.[5] *See, e.g.*, *United States v. Young*, 580 F.3d 373, 377 (6th Cir. 2009) (holding that the Michigan fleeing statute's requirement of "willful" failure to stop "clearly involved" purposeful conduct); *United States v. LaCasse*, 567 F.3d 763, 766 (6th Cir. 2009) (same holding regarding a different subsection of Michigan's fleeing statute); *United States v. Tyler*, 580 F.3d 722, 725 (8th Cir. 2009) (Minnesota's fleeing statute requires "intent to elude" and is therefore "purposeful" under *Begay*, but is not categorically "violent

---

[5] In *United States v. Roseboro*, 551 F.3d 226 (4th Cir. 2009), the Fourth Circuit considered whether South Carolina's fleeing offense was a violent felony under the residual clause as interpreted in *Begay*. The court noted that in contrast to fleeing statutes in most other states, the South Carolina statute did not require knowing or intentional disregard of an officer's signal. *Id.* at 235, 236 n.5.

and aggressive"); *United States v. Harrimon*, 568 F.3d 531, 534 (5th Cir. 2009) (considering Texas's fleeing statute and noting "unlike the DUI statute at issue in *Begay*, fleeing by vehicle requires intentional conduct"); *United States v. Harrison*, 558 F.3d 1280, 1295 (11th Cir. 2009) (concluding that the Florida statute's requirement of "willful" fleeing satisfied *Begay*'s purposeful require-ment but the crime was not sufficiently "violent and aggressive"); *United States v. West*, 550 F.3d 952, 970-71 (10th Cir. 2008) (holding that the Utah fleeing statute's requirement of "willfulness" satisfies *Begay*'s "purposeful" requirement).

The circuits are divided, however, on whether vehicular fleeing satisfies *Begay*'s requirement that the predicate crime involve conduct that is similarly "violent and aggressive" as the residual clause's enumerated crimes. The Fifth, Sixth, and Tenth Circuits have held that fleeing satisfies *Begay*'s "violent and aggressive" requirement. *See Harrimon*, 568 F.3d at 534-35; *Young*, 580 F.3d at 377-78; *LaCasse*, 567 F.3d at 767; *West*, 550 F.3d at 969-70.[6] The Eighth and Eleventh Circuits have come to the opposite conclusion. *See Tyler*, 580 F.3d at 725-26; *Harrison*, 558 F.3d at 1295-96.

---

[6] *West* contained a lengthy discussion analogizing fleeing to escape. Any suggestion in that discussion that *all* escape crimes—including failure to report—are violent felonies was withdrawn by *United States v. Shipp*, No. 08-5157, 2009 WL 4827367, at n.3 (10th Cir. Dec. 16, 2009), in light of *Chambers*, 129 S. Ct. 687. This does not alter *West*'s holding regarding vehicular fleeing.

*Spells* preceded these opinions; ours was the first circuit to address whether vehicular fleeing qualifies as a violent felony after *Begay*. *Spells* held that Indiana's fleeing offense is not only "purposeful" but is also categorically "aggressive" and on this basis held that it satisfied the *Begay* framework. 537 F.3d at 752. Our decision in *Spells*, however, did not address whether fleeing is "violent" in the way required by *Begay*. We do so here and hold that Wisconsin's crime of vehicular fleeing involves conduct that is similarly "violent and aggressive" to burglary, arson, extortion, or crimes that involve the use of explosives.

First, it bears emphasizing that the Supreme Court's categorical approach focuses on the generic crime as ordinarily committed; it is not necessary, therefore, that every conceivable violation of the statute meet the *Begay* test. *See James v. United States*, 550 U.S. 192, 208 (2007); *see also Woods*, 576 F.3d at 404. Instead, the proper inquiry is whether the conduct encompassed by the statutory elements of the crime, in the ordinary or typical case, presents a serious potential risk of physical injury and (as *Begay* requires) bears sufficient similarity—both in kind and degree of risk posed—to the conduct encompassed by the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives. *See Woods*, 576 F.3d at 404. If the conduct encompassed by Wisconsin's fleeing statute is "violent and aggressive" in this generic sense, then the requirements of *Begay* are satisfied and the conviction was properly counted as a violent felony.

The fleeing offense at issue here makes it a crime for the driver of a vehicle to knowingly disregard a police signal and take flight by accelerating his speed or extinguishing the lights of his vehicle in an attempt to flee or elude the pursuing officer. For reasons we will explain, we think this conduct is violent and aggressive in the sense required by *Begay*. Dismuke's argument to the contrary relies largely on this statement from *Begay*: "By way of contrast, statutes that forbid driving under the influence, such as the statute before us, typically do not *insist on* purposeful, violent, and aggressive conduct . . . ." 128 S. Ct. at 1586 (emphasis added). He urges us to take the Supreme Court's use of the phrase "insist on" quite literally—that is, as limiting the residual clause to crimes that *require* or "insist on" a violent act. This strikes us as an overreading of this singular sentence and a misreading of the opinion as a whole.

The crimes enumerated in the residual clause are violent and aggressive not because they invariably involve acts of violence but because they are characterized by aggressive conduct that carries the genuine potential for violence and thus physical injury to another. Unlike *Begay*'s "purposeful" requirement, which focuses on the *mens rea* element of the predicate crime, *see Woods*, 576 F.3d at 408, *Begay*'s "violent and aggressive" requirement is a descriptive phrase and focuses on the character of the conduct encompassed by the elements of the crime, not the elements themselves.

The Supreme Court observed in *Begay* that the enumerated crimes in the residual clause typically involve

"violent and aggressive" conduct and therefore limited the reach of the clause to like crimes. None of the enumerated crimes, however, *requires* an act of violence. Burglary doesn't require an act of violence; neither does extortion or arson. Perhaps crimes involving the use of explosives could be said to require an act of violence in that an explosion is inherently violent. Even so, we do not read the *Begay* "insists on" language in the strictly literal sense that Dismuke suggests. We conclude instead that the "violent and aggressive" limitation requires only that a residual-clause predicate crime be characterized by aggressive conduct with a similar potential for violence and therefore injury as the enumerated offenses, not that it must "insist on" or require a violent act.

The Supreme Court's decision in *Chambers v. United States*, 129 S. Ct. 687 (2009), confirms this understanding of how to apply *Begay*'s "violent and aggressive" requirement. The predicate conviction in *Chambers* was the version of Illinois' escape crime that consists of a failure to report for custody. The Court distinguished the failure-to-report version of this offense from one that involved an actual escape from physical custody. "The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." *Id.* at 691. The Court continued: "Conceptually speaking, the crime amounts to a form of inaction, a far cry from the 'purposeful, violent, and aggressive conduct' *potentially at issue* when an offender uses explosives against property, commits arson, burgles a

dwelling or residence, or engages in certain forms of extortion." *Id.* at 692 (quoting *Begay*, 128 S. Ct. at 1586) (emphasis added). The Court concluded that a conviction for failure to report for custody was not a violent felony under the residual clause. *Id.* at 693.

*Chambers* is relevant here in two respects. First, as a general matter, *Chambers* confirms that the required comparison between the predicate and enumerated crimes tests whether the predicate crime is characterized by aggressive conduct with a similar potential for violence as the enumerated offenses. And second, more specifically to the point here, *Chambers* implies that unlike a failure to report, which does not have these characteristics, an escape from physical custody would meet this test.

Our decision in *Spells* was issued before *Chambers,* but we noted there that in the ordinary case, "[t]aking flight [in a vehicle] calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit." *Spells*, 537 F. 3d at 752. In *West*, also decided before *Chambers,* the Tenth Circuit elaborated on this point:

> [T]he offense of failing to stop at the command of a police officer will typically lead to a confrontation with the officer being disobeyed. It is likely to lead, in the ordinary case, to a chase or at least an effort by police to apprehend the perpetrator. All of these circumstances increase the likelihood of serious harm to the officers involved as well as any bystanders

> that by happenstance get in the way of a fleeing perpetrator or his pursuers. For these reasons, we conclude that the crime of failing to stop at an officer's command is, in the ordinary case, an offense involving violent and aggressive behavior.

550 F.3d at 970.

The Fifth Circuit's decision in *Harrimon* had the benefit of both *Begay* and *Chambers*, and the court drew the same implication from *Chambers* as we do here. "Th[e] active defiance of an attempted stop or arrest is similar to the behavior underlying an escape from custody, which, as the Supreme Court noted in *Chambers,* is 'less passive' and 'more aggressive' than that likely underlying failure to report." *Harrimon*, 568 F.3d at 535. The court noted that "[f]leeing by vehicle requires disregarding an officer's lawful order, which is a clear challenge to the officer's authority and typically initiates pursuit." *Id.* The court continued: "[F]leeing by vehicle 'will typically lead to a confrontation with the officer being disobeyed,' a confrontation fraught with risk of violence." *Id.* (quoting *West,* 550 F.3d at 970). On this reasoning, the court concluded that the Texas crime of fleeing by vehicle satisfied *Begay*'s "violent and aggressive" requirement and qualified as a violent felony under the definition's residual clause. *Id.*

Likewise, the Sixth Circuit relied on the discussion of escape in *Chambers* to conclude that Michigan's fleeing statute satisfies the requirements of *Begay. See LaCasse,* 567 F.3d at 767. The court observed:

What is fleeing and eluding but an attempt to escape? It is certainly not a form of inaction and, for that reason, we read *Chambers* to stand, albeit tacitly, for the proposition that an attempt to escape from law enforcement officials may represent a 'violent felony' under the ACCA because it includes aggressive conduct . . . .

*Id.*

Although, as we have noted, the Eighth and the Eleventh Circuits have reached the opposite conclusion, *see Tyler*, 580 F.3d at 725-26; *Harrison*, 558 F.3d at 1295-96, we think our colleagues in the Fifth, Sixth, and Tenth Circuits have the better of the argument.[7] Accordingly,

---

[7] It is important to note again, *see supra* note 3, that the Florida statute before the Eleventh Circuit in *Harrison* was broader than the Wisconsin statute at issue here. The particular subsection of the Florida statute at issue in *Harrison* was the base offense of willful fleeing or attempting to elude; a separate section of the statute, not at issue in *Harrison*, covered fleeing by accelerated speed or by "wanton disregard for the safety of persons or property." 558 F.3d at 1290. In holding that the base offense of willful fleeing was not a violent felony, the Eleventh Circuit distinguished the version of the crime that entailed fleeing at high speed or with wanton disregard for safety: "Of course, our conclusion would be different were the statute to criminalize conduct that, in the ordinary case, involves an offender stepping on the gas and driving away recklessly without regard for the safety of others." *Id.* at 1295. Thus, our conclusion here regarding the Wisconsin stat-

(continued...)

we hold that Wisconsin's vehicular-fleeing crime satisfies *Begay*'s "violent and aggressive" requirement. Dismuke's fleeing conviction was therefore properly classified as a violent felony for purposes of the ACCA. His resulting 15-year sentence, the mandatory minimum under the ACCA, was statutorily required.

AFFIRMED.

---

[7] (...continued)
ute—which requires fleeing by accelerated speed or extinguished vehicle lights—actually parts company with just one circuit, the Eighth, in *Tyler*, 580 F.3d at 726.

---