NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0571n.06

No. 09-1159

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 30, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| KEVIN STEPHENS | ) | |
|     Defendant-Appellant. | ) | O P I N I O N |
| | ) | |
| | ) | |

BEFORE:    COLE and McKEAGUE, Circuit Judges; MAYS, District Judge.[*]

    **McKEAGUE, Circuit Judge.** Following investigations of drug trafficking by the Sunnyside Gang in Saginaw, Michigan, prosecutors obtained guilty pleas from and convictions against numerous gang members. Kevin Stephens pled guilty to distribution of crack cocaine and was sentenced to 262 months imprisonment. He now appeals, arguing that the district court incorrectly characterized him as a career offender for the purposes of sentencing and failed to take into account pertinent sentencing factors under 18 U.S.C. § 3553(a). We find that the district court correctly categorized Stephens as a career offender under the Sentencing Guidelines ("Guidelines") and did not err in sentencing Stephens. Accordingly, we affirm the sentence.

**I.**

    Over the course of several years the Sunnyside Gang sold crack cocaine on the South Side (or "Sunnyside" area) of Saginaw, Michigan. In 2005, the government arrested, indicted, and

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

convicted several gang members, and in 2007 launched a second wave of investigations. During the course of this second investigation, Stephens – who apparently joined the gang sometime that year – was twice involved in controlled purchases of crack cocaine. Following the second purchase, police stopped the car in which Stephens was a passenger, and, upon transporting Stephens to jail, discovered that Stephens was concealing just over 8 grams of crack cocaine in a body cavity. At the time he was arrested, Stephens – who as both a juvenile and an adult had been convicted of numerous crimes, including arson, possession of a loaded handgun in public, possession of cocaine, attempted delivery of a controlled substance, unlawful use of a motor vehicle, and fleeing and eluding the police – was on parole from both felony and misdemeanor convictions.

In November of 2007, the government indicted Stephens, along with nine other gang members, on various drug charges. Stephens himself was charged with conspiring to distribute and distributing crack cocaine. On July 21, 2008, Stephens pled guilty to count 22 of the first superceding indictment: possession with intent to distribute 5 or more (in this case 11) grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). As part of the plea agreement, the government recommended that the court calculate Stephens's Guidelines sentencing range as between 120 and 150 months. The agreement also stated that if the court determined instead that Stephens was a career offender and accordingly impose a higher sentence, then Stephens would be permitted to withdraw his guilty plea and proceed to trial. Following the court's acceptance of Stephens's guilty plea, the United States Probation Officer prepared the Presentencing Investigation Report (PSR), in which she concluded that Stephens in fact qualified as a career offender under the Guidelines, and that the Guidelines sentencing range should thus be between 262 and 327 months. After adopting

this recommendation, the district court offered Stephens an opportunity to withdraw his guilty plea;

Stephens declined, and instead stated that he was "going to go with the career offender." At a

hearing on January 29, 2009, the district court sentenced Stephens to serve 262 months in prison.

This appeal followed.

**II.**

Stephens's first argument in this appeal is that the district court erred by sentencing him as

a career offender under the Sentencing Guidelines.[2] "Legal conclusions regarding application of the

United States Sentencing Guidelines are reviewed *de novo*." *United States v. Bass*, 315 F.3d 561,

564-65 (6th Cir. 2002) (quoting *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002)). As we

have repeatedly considered and rejected Stephens's exact argument, we find that the district court

did not err in categorizing Stephens as a career offender under the Guidelines.

Under the Guidelines, a defendant qualifies as a career offender if: "(1) the defendant was

at least eighteen years old at the time the defendant committed the instant offense of conviction; (2)

the instant offense of conviction is a felony that is either a crime of violence or a controlled

substance offense; and (3) the defendant has at least two prior felony convictions of either a crime

of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Following the recommendation

of the PSR, the district court concluded that Stephens qualified as a career offender on the basis of

prior convictions in 2002 for attempted delivery of cocaine and in 2003 for the Michigan crime of

---

[2]Stephens repeatedly and erroneously maintains that he was sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). In fact, Stephens was sentenced as a career offender under the Sentencing Guidelines, U.S.S.G. §4B1.1.

fleeing and eluding police in the third degree under MCL § 750.479a.  Stephens does not dispute that

he was at least eighteen years old at the time of the instant offense and that both his prior conviction

for attempted delivery of cocaine and his present conviction for possession with intent to distribute

cocaine base constitute controlled substance offenses.  He does, however, object to the

characterization of fleeing and eluding in the third degree – one of his two predicate felonies – as a

"crime of violence."

Under the Sentencing Guidelines:

[T]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).[3]  Fleeing and eluding is defined under Michigan law as follows:

---

[3]Stephens apparently believes that he was sentenced under the provision of the ACCA enhancing sentences for those previously convicted of "violent felonies," *see* 18 U.S.C. § 924(e). "[W]e treat a 'crime of violence' under § 4B1.1(a) of the guidelines the same as a 'violent felony' under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) . . . because both laws share essentially the same definitions (if not the same titles)." *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009) (citation omitted).  Under the ACCA:

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer.

MCL § 750.479a(1). A driver commits the offense in the third-degree if the violation "results in a collision or accident," if the violation "occurred in an area where the speed limit is 35 miles an hour or less," or if the driver has a previous conviction for actual or attempted fourth-degree fleeing and eluding or similar misconduct. MCL § 750.479a(3).[4]

This is not the first time that we have addressed the question of whether fleeing and eluding in the third degree under MCL § 750.479a constitutes a crime of violence or violent felony. In 2004,

---

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B).

[4]The PSR described Stephens' violation of MCL § 750.479a as follows:

> This incident took place on February 27, 2003, when Saginaw police officers were dispatched to an area in response to shots being fired. When officers arrived in that area, they noticed a burgundy four-door vehicle which was also suspected in a shooting that had occurred several days earlier. Officers followed the vehicle and noticed it was occupied by four subjects. When officers attempted to stop the vehicle, the vehicle sped up and attempted to make a turn. Subsequently, the vehicle hit two trees prior to the driver exiting the vehicle and beginning to run. Although officers lost [Stephens] while in pursuit, they found him hiding under a van after backtracking. One of the passengers in the vehicle was Dominique Phillips who was eight months pregnant with the defendant's baby.

(PSR at 14.)

we concluded that it does for purposes of the Sentencing Guidelines. *See United States v. Martin*, 378 F.3d 578, 580 (6th Cir. 2004). We then determined that the reasoning in *Martin* applied to the analogous career criminal provisions of the ACCA, 18 U.S.C. § 924(e). *United States v. LaCasse*, 253 F. App'x 553, 556 (6th Cir. Nov. 6, 2007). In 2009, however, the Supreme Court vacated and remanded our holding in *LaCasse* "for further consideration in light of" *Begay v. United States*, 553 U.S. 137 (2008) (holding that the New Mexico offense of driving under the influence of alcohol was not a violent felony within the meaning of the ACCA) and *Chambers v. United States*, 129 S. Ct. 687 (2009) (holding that the Illinois offense of failure-to-report was not a violent felony within the meaning of the ACCA). *LaCasse v. United States* 129 S. Ct. 992 (2009). On remand in *LaCasse*, we concluded "that neither *Begay* nor *Chambers* alters our earlier holding that Michigan's 'fleeing and eluding' statute . . . qualifies as a violent felony" under the ACCA. *United States v. LaCasse*, 567 F.3d 763, 764 (6th Cir. 2009). LaCasse sought panel rehearing and en banc review, both to no avail, and then again petitioned the Supreme Court to grant certiorari – which the Court declined to do on January 25, 2010. *LaCasse v. United States*, 130 S. Ct. 1311 (2010).

In *Martin*, which governs the question of whether the Michigan offense of fleeing and eluding in the third degree constitutes a crime of violence under the Guidelines, we wrote:

> In deciding whether an offense amounts to a "crime of violence" under these two tests, we have applied a "categorical approach," which is to say we have looked at "the fact of conviction and the statutory definition of the predicate offense," not the "underlying facts regarding the offense," to determine whether either test is satisfied. . . . Because fleeing and eluding does not have as an element "the use, attempted use, or threatened use of physical force against the person of another," the pertinent question is whether the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." We believe that it does.

*Martin*, 378 F.3d at 581-82 (numerous citations omitted). Endorsing this categorical approach, the *LaCasse* court added (in the terms applied in *Begay* and *Chambers*) that the "statute at issue here involves 'aggressive' conduct that 'presents a serious potential risk of physical injury' to another." 567 F.3d at 767. In short, after considering under the categorical approach the factors that make up the Michigan offense of fleeing and eluding in the third degree, we have repeatedly and consistently held that this offense is *always* a crime of violence or a violent felony.

Perhaps because he erroneously believes that he was sentenced under the ACCA, Stephens focuses in this appeal on attacking our post-remand holding (concerning the ACCA) in *LaCasse*, 567 F.3d at 764, rather than on attacking our earlier holding (concerning the Guidelines) in *Martin*, 378 F.3d at 580. Stephens rests his challenge to *LaCasse* on two points or arguments: first, that our post-remand *LaCasse* decision conflicts with *Begay* and *Chambers*; and second, that the Eighth Circuit in a recent case specifically has repudiated the *LaCasse* reasoning. As to the first point, Stephens argues that when the Supreme Court vacated the original panel decision in *LaCasse*, the court was "sending a message . . . that *LaCasse* was out of alignment" with *Begay* and *Chambers*. Even if Stephens is correctly interpreting the Supreme Court's decision to vacate and remand, our post-remand *LaCasse* decision clearly represents binding authority in this circuit holding that *Begay* and *Chambers* had no effect on the conclusion that fleeing and eluding in the third degree under Michigan law constitutes a violent felony under the ACCA. *See LaCasse*, 567 F.3d at 764. More recently, moreover, we have found that even fleeing and evading in the *fourth* degree under Michigan law also constitutes a crime of violence under the ACCA. *See United States v. Young*, 580

F.3d 373, 379 (6th Cir. 2009) (overturning *United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006)), *cert denied by Young v. United States*, 130 S. Ct. 1723 (2010).[5]

As to his second point, while Stephens is correct that the Eighth Circuit has reached a different conclusion in considering whether a similar offense in Minnesota constitutes a crime of violence, *see United States v. Tyler*, 580 F.3d 722, 726 (8th Cir. 2009), the fact that a sister circuit disagrees with our case law does not demonstrate that *our* law is wrong, or that we are free to ignore circuit precedent. *See, e.g.*, *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001)) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."). Both the Seventh Circuit and the Tenth Circuit, moreover, have in turn explicitly declined to follow the Eight Circuit's lead and instead agreed with our reasoning in *LaCasse* and *Young*. *See United States v. Dismuke*, 593 F.3d 582, 592 n.3, 596 (7th Cir. 2010) ("Although . . . the Eighth and the Eleventh Circuits have reached the opposite conclusion . . . we think our colleagues in the Fifth, Sixth, and Tenth Circuits have the better of the argument."); *United States v. McConnell*, 605 F.3d 822, 829-30 (10th Cir. 2010).

Stephens, understandably, would prefer that *Martin*, *LaCasse*, and *Young* had not been decided; that he disagrees with our previous holdings, however, surely does not prove that he should

---

[5]This all said, we do wish to express that we are somewhat concerned with the direction our case law has been taking by expanding, where the Supreme Court in *Chambers* and *Begay* instead appears to be moving toward narrowing, the definition of "crime of violence" or "violent felonies" within the meaning of the Guidelines or the ACCA.

prevail in this case. Accordingly, we find that the district court did not err in concluding that the Michigan offense of third-degree fleeing and eluding constitutes a "crime a violence" within the meaning of U.S.S.G. § 4B1.1, and therefore correctly categorized Stephens as a career offender under the Sentencing Guidelines.

### III.

Stephens next argues that the district court erred by failing to take into account his age, absence of previous gun charges, and minor roles in previous crimes when considering sentencing factors under 18 U.S.C. § 3553(a), and that as a result his sentence is procedurally unreasonable.[6] Ordinarily, we review sentences under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). As Stephens failed to object on these grounds before the district court, however, we review Stephens's sentence for plain error. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).[7] Plain error review involves four prongs:

---

[6]Stephens also erroneously argues the district court's sentence of Stephens as a career offender constitutes a "substantial deviation from the guideline range," and that the district court needed to "explain how this case is sufficiently compelling to support a variance of this magnitude." In fact, a defendant's career offender qualification is factored into the Guidelines range. *See* U.S.S.G. § 4B1.1(b)-(c). As the district court correctly noted at sentencing, given that Stephens qualifies as a career offender, "[t]he resulting guideline range . . . would come to 262 to 327 months." (R. 223 (1/27/09 Sentencing Tr.) at 8.) In other words, the district court did not deviate from the Guidelines range at all, but instead sentenced at the low end of that range.

[7]Stephens concedes that the district court asked his trial attorney whether there were any objections, and that the trial attorney responded that there were none. Nonetheless, Stephens argues that we should review for abuse of discretion rather than plain error because the district court did not ask *Stephens himself* whether Stephens had any objections, and so Stephens did not have an opportunity to object. Stephens cites no authority for the proposition that a defendant's attorney does not represent the defendant for the purpose of making objections. In this instance, moreover, the district court actually asked whether there were "[a]ny questions or objections to the sentence *from*

> First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned . . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings."

*Puckett v. United States*, --- U.S. ----, 129 S.Ct. 1423, 1429 (2009). Fourth, if these three prongs are satisfied, then the court "has the *discretion* to remedy the error – discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (emphasis in original).

In reviewing a court's sentencing decision, we look to whether the sentence was both procedurally and substantively reasonable. *See United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). As a within-the-Guidelines sentence, Stephens's sentence "enjoys a rebuttable presumption of reasonableness." *See United States v. Lay*, 583 F.3d 436, 449 (6th Cir. 2009) (citing *Vonner*, 516 F.3d at 389-90); *see also Rita v. United States*, 551 U.S. 338, 347 (2007). As the Supreme Court has explained, in reviewing a sentence, we:

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.

*Gall*, 552 U.S. at 50-51 (citation omitted). 18 U.S.C. § 3553(a) "tells the sentencing judge to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims

---

*the defendant*." (1/29/09 Sentencing Tr. at 14 (emphasis added).) Stephens, in other words, did have the opportunity to object, but chose not to do so.

of sentencing, namely (a) 'just punishment' (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution." *Rita*, 551 U.S. at 347-48. "The district court is not required to refer explicitly to each of the statutory sentencing factors when imposing a sentence." *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) (citing *United States v. Morris*, 448 F.3d 929, 932 (6th Cir. 2006)). That said, the district judge "must 'make an individualized assessment based on the facts presented,' and must discuss all relevant statutory factors to facilitate 'reasonable appellate review.'" *Id.* (citing *Gall*, 552 U.S. 38; *Morris*, 448 F.3d at 932).

> During the sentencing hearing, the district court had this to say regarding the 3553(a) factors:
>
> As counsel have both indicated, the guidelines that we have spent a good deal of time with are, indeed, advisory. They're a factor to be considered by the court.
>
> We have also considered each of the 3553(a) factors, particularly the gravity of the offense; clearly in this instance, the gentleman's personal criminal history weighs heavily in the balance. And the sentence is also significantly affected by the court's consideration of the necessity for protection of the public.
>
> This gentleman has been involved in criminal misconduct, by my view, since he was 13 years of age. Despite significant run-ins with the criminal justice system, little has affected his behavior.
>
> This gentleman, on the other hand, during his tenure with the bureau is in need of both educational and vocational training. Indeed, that will be a recommendation that is made to the bureau.
>
> Pursuant to the Sentencing Reform Act of 1984, and in consideration of each of the 3553(a) factors, the gentleman will be committed to the custody of the United States Bureau of Prisons for a term of 262 months.

(R. 224 (1/29/09 Sentencing Tr.) at 12.)

The district court's explanation of the 3553(a) factors, while brief, is legally sufficient. As the Supreme Court explained in *Rita*, 551 U.S. at 356-57,

> The sentencing judge should set forth enough to satisfy the appellate court that he . . . has a reasoned basis for exercising his own legal decisionmaking authority. . . . Unless a party contests the Guidelines sentence generally under § 3553(a) – that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way – or argues for departure, the judge normally need say no more.

We have in the past found no abuse of discretion where a trial judge addressed the 3553(a) factors in a "terse" manner, used "generic language to describe the defendant's crimes," and "without elaboration characterize[d] the 'nature and circumstances' of the offenses as 'serious.'" *See Simmons*, 587 F.3d at 359 (citing *Vonner*, 516 F.3d at 392). As we explained in *Simmons*, "[i]n light of the judge's brevity, such analysis is short of ideal in assuring this court that the trial judge in fact did his full duty. On its own, however, it surely does not overcome the deference we must accord lower courts in sentencing criminal defendants." *Id.* Here, facing no objection from Stephens, the district court in sentencing Stephens explicitly mentioned that it was considering Stephens' criminal history, "each of the 3553(a) factors, particularly the gravity of the offense," the failure of past run-ins with the law to rehabilitate Stephens, and Stephens's need for "educational and vocational training". While it could have addressed the 3553(a) factors at greater length, the district court simply did not "devia[te] from a legal rule," and so did not commit any error – much less plain error. *See Puckett*, 129 S. Ct. at 1429.

**IV.**

As we have consistently rejected Stephens's argument that the Michigan crime of fleeing and eluding in the third degree is not a "crime of violence" within the meaning of the Guidelines, we find that the district court did not err in characterizing Stephens as a career offender. As the district court's analysis of the 3553(a) factors, while brief, was sufficient, we also find that the district court did not err in sentencing Stephens and that Stephens's sentence was not procedurally unreasonable. Accordingly, we **AFFIRM** the district court's sentence.