In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1762 & 10-2230

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT JOHNSON and LISA LAMB,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 08 CR 30217—**Michael J. Reagan**, *Judge.*

ARGUED APRIL 15, 2011—DECIDED AUGUST 11, 2011

Before POSNER and MANION, *Circuit Judges,* and
LEFKOW, *District Judge.*[*]

MANION, *Circuit Judge.* After a two-year investigation,
Scott Johnson was indicted and eventually convicted on
charges arising from a large cocaine-dealing conspiracy

[*] The Honorable Joan Humphrey Lefkow, United States
District Judge for the Northern District of Illinois, sitting by
designation.

that he ran; he was sentenced to life in prison. His girlfriend, Lisa Lamb, was convicted on a lesser charge of obstructing justice for destroying cocaine base to prevent its discovery by the government and its use against her and Johnson in a criminal prosecution. Both appeal. Johnson challenges the district court's refusal to suppress certain evidence, to give requested jury instructions, and to order a mistrial based on a comment by the prosecutor during opening statements. Lamb argues that the criminal statute under which she was convicted does not apply to her conduct. She also challenges her sentence. We affirm the convictions and sentences in all respects.

## I.

In 2006, federal law enforcement authorities began investigating Scott Johnson. As part of the investigation, the Drug Enforcement Agency observed three properties in Washington Park, Illinois, linked to Johnson: his restaurant (the Best Fish House), his residence (the State Street residence), and another residence that he used as a distribution point for cocaine (the Westmoreland residence). Based on its surveillance, records from the utility company, and information from four confidential informants, the government linked Johnson, along with his associates and his girlfriend Lisa Lamb, and these three properties to cocaine dealing. In early April 2008, federal agents coordinated a controlled purchase of cocaine from Johnson at the Westmoreland residence by one of the confidential informants. That informant met

with Johnson and returned with 250 grams of cocaine. On the same day, agents stopped a vehicle they observed leaving the Westmoreland residence and recovered 125 grams of cocaine. Based on the evidence gained from the four confidential informants and direct surveillance, a magistrate judge issued search warrants for all three properties in question.

While observing the Westmoreland residence on the day of the controlled purchase, agents had seen Johnson come and go several times. When they attempted to stop his vehicle, Johnson led the agents on a high-speed chase. Agents eventually apprehended Johnson and discovered $16,400 in cash on his person. They then took him with them while they executed the search warrants. At the Best Fish House, agents discovered a large amount of money and several firearms. And at the State Street residence they found a vacuum heat sealer and a big bag of rubber bands—items commonly used in processing cocaine for distribution. During this period, Johnson made several incriminating confessions: he had received seven kilograms of cocaine the day before and had already sold it all; and he had distributed another ten to twelve kilograms in the past two to three weeks.

During Johnson's chase, some agents attempted to execute the search warrant at the Westmoreland residence. At that time, Lamb and Johnson's brother were still at the residence. When one agent approached and knocked on the door, Lamb answered through an iron gate on the door and refused to let him in, demanding

a copy of the search warrant (which was with other agents at the time). The agent told her that he would obtain a copy of the warrant, but that she needed to remain in front of the open door, for his safety and to prevent the destruction of evidence. In response, Lamb slammed the metal inner door. It took agents between 20 and 30 minutes—and the assistance of local police and firefighters, who eventually cut out the entire door frame—to breach the house. During that time, agents heard toilets flushing and saw Lamb standing at the kitchen sink, where she was apparently washing dishes. When the agents finally entered the house, they discovered a glass measuring dish with cocaine base residue on it. They also found typical tools of the cocaine and crack trafficking trade in the house, including small plastic bags, scales, and latex gloves.

Both Johnson and Lamb were indicted. Johnson was charged with distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Lamb was charged with obstruction of justice in violation of 18 U.S.C. § 1512(c)(1). Both were also charged with a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, but the government dropped that count against Lamb on the eve of trial.[1]

---

[1] At oral argument, the government explained that two witnesses against Lamb refused to testify at the last minute, leaving

(continued...)

Before trial, Johnson moved to suppress the evidence recovered from the Westmoreland residence, arguing that the search warrant was not supported by probable cause. The district court denied the motion. The sixteen-page affidavit in support of the application detailed an extensive investigation that supported a finding of probable cause. Lamb moved to sever her case from Johnson's, but the district court denied the motion. Lamb was still charged as a co-conspirator at the time, and she did not renew her motion once that conspiracy charge had been dropped.

During opening statement, the prosecutor initially overstated the quantity of cocaine the government had found. Rather than the 375 grams recovered from purchases on the day of the arrest, the prosecutor referred to 5 kilograms. The misstatement was corrected immediately, and no evidence was presented that the government had discovered so much cocaine. Johnson unsuccessfully moved for a mistrial. Johnson's main associate testified about an extensive cocaine distribution conspiracy. Others who had purchased cocaine from Johnson testified, including the informant who had made a controlled purchase on the day of Johnson's arrest. Federal agents told the jury about the investigation and Johnson's confessions.

Against Lamb, the agents testified about her actions when they tried to search the Westmoreland residence.

---

[1] (...continued)
them with little choice but to abandon the conspiracy charges and proceed solely on obstruction charges.

The jury also heard from an associate of Johnson that Lamb had often been present when Johnson picked up and sold cocaine.

The jury convicted Johnson and Lamb of all charges. The district court sentenced Johnson to concurrent sentences of life imprisonment for the conspiracy conviction, 360 months for the distribution conviction, and 120 months for the felon-in-possession conviction. It also ordered Johnson to pay a $2.25 million fine. At Lamb's sentencing, the district court found that the conduct relevant to her obstruction-of-justice conviction included 11 kilograms of cocaine (far short of the total amount attributed to Johnson) and 122 milligrams of cocaine base. The court sentenced her to 78 months' imprisonment and 3 years' supervised release. Both Johnson and Lamb filed timely notices of appeal, and their cases were consolidated.

## II.

Although their cases have been consolidated, none of the issues they pursue on appeal overlaps. Therefore, we address each defendant's arguments separately.

### A.  Scott Johnson's Appeal

#### 1.  *Suppression of Evidence*

Johnson first argues that the search warrants executed on the day of his arrest were fatally flawed and that the district court erred in denying his motion to suppress the

evidence. When reviewing the denial of a motion to suppress, we give deference to the issuing judge's finding of probable cause, but review de novo the district court's legal conclusion that the warrant was supported by probable cause. *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009).

As an initial matter, we note that while Johnson's appeal attacks the bases for any and all of the search warrants issued in this case, his pretrial motion to suppress specifically addressed only the warrant for the search of the Westmoreland residence. When a defendant fails to move to suppress evidence before trial, he waives his objection to the evidence under Federal Rule of Criminal Procedure 12(e); such waived arguments are not subject to appellate review unless the district court first grants relief from the waiver for good cause. *United States v. Acox*, 595 F.3d 729, 730 (7th Cir. 2010). Therefore, we entertain only Johnson's challenge to the search warrant for the Westmoreland residence.

Johnson argues that there was insufficient evidence to support the magistrate judge's finding of probable cause because the affidavit accompanying the warrant application relied on insufficiently corroborated informants. Where, as here, the issuing judge considered only the supporting affidavit when deciding whether to issue a search warrant, "the warrant must stand or fall solely on the contents of the affidavit." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002). And when an affidavit relies on information supplied by an informant, the issuing judge must consider whether the information is

reliable. The judge must look at a variety of factors, including the degree to which police have corroborated the information, whether and to what extent the information is based on the informant's own observations, how much detail the informant provides, how much time elapsed between the events reported and the warrant application, and whether the informant personally appeared before the warrant-issuing judge. *United States v. Dismuke*, 593 F.3d 582, 586-87 (7th Cir. 2010). We take into account these and any other pertinent factors as a whole, and no one factor necessarily dooms a search warrant. *Bell*, 585 F.3d at 1049.

The affidavit accompanying the warrant application contained information from four confidential informants tying Johnson to cocaine dealing at various locations over the course of two years. While that might be enough for an arrest warrant, a search warrant for the Westmoreland residence, however, required more than general evidence of Johnson's cocaine dealing: the affidavit needed to allow the issuing judge to determine that there was probable cause that evidence of that cocaine dealing would be found at the Westmoreland residence. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

We agree with the district court that the information from the fourth confidential informant alone was sufficient to support probable cause for the search warrant. Specifically, this informant told the government that he had purchased multi-ounce quantities of cocaine from Johnson four times in the preceding week, all from the Westmoreland residence, and made a controlled

purchase on the same day as the warrant application. And this informant was previously known to the government and had provided reliable information in the past. *See United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (citing as persuasive "the fact that the informant had completed numerous other controlled buys in the past and provided, on those occasions, accurate and reliable information"). Moreover, his own observations were corroborated by direct surveillance by federal agents. *See Dismuke*, 593 F.3d at 587. Finally, the strongest bit of evidence supporting the warrant—the informant's supervised, controlled purchase from Johnson, at the residence—took place mere hours before the warrant was requested and issued. *See id.*

All of this was enough for the issuing judge to conclude that the fourth informant's statements were reliable. *See id.* And those statements were more than adequate to provide the magistrate judge with "sufficient evidence to induce a reasonably prudent person to believe that a search [would] uncover evidence of a crime." *United States v. Lowe*, 516 F.3d 580, 585 (7th Cir. 2008). Thus, the district court properly denied Johnson's motion to suppress the evidence recovered from the Westmoreland residence.

### 2. *Special Credibility Instruction*

Johnson next argues that the district court erred by failing to instruct the jury that two of the witnesses against Johnson had received benefits from the government because they had not been charged with possession

of cocaine in exchange for their testimony and were hoping that by testifying they would not be charged. The district court is in the best position to assess the risk of unreliable testimony, and therefore we leave the decision regarding credibility instructions to the district court's discretion. *United States v. Tavarez*, 626 F.3d 902, 904 (7th Cir. 2010). It is well established in this circuit that general credibility instructions highlighting the possibility of bias are generally adequate, and thus that special credibility instructions are not required as a matter of course. *United States v. Cook*, 102 F.3d 249, 251-52 (7th Cir. 1996). While we have never ruled out the possibility that some circumstances may demand special credibility instructions, we addressed, and rejected, arguments very similar to Johnson's in *United States v. Jordan*, 223 F.3d 676, 692 (7th Cir. 2000), and *Cook*, 102 F.3d at 251-52. Absent any special factors distinguishing this case, we have no reason to revisit the issue here.

3.  *Misstatement of Drug Quantity*

Johnson's final argument is that in its opening statement, the prosecutor erroneously claimed that over five kilograms of cocaine were recovered from searches of Johnson's property when in fact the amount was less than one half-kilogram. Johnson claims that this planted a false impression in the jurors' minds that persisted throughout the trial to Johnson's prejudice. Therefore, Johnson argues, the district court erred in denying his timely motion for a mistrial. We review the denial of a motion for a mistrial for an abuse of discretion, because

the district court is in a superior position to judge the "seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial." *United States v. Lauderdale*, 571 F.3d 657, 660 (7th Cir. 2009).

To win a new trial based on a prosecutor's improper comments, a defendant must establish that the prosecutorial misconduct deprived him of his right to a fair trial. *United States v. Myers*, 569 F.3d 794, 798 (7th Cir. 2009). This means that Johnson must establish both that the prosecutor's misstatement was improper and that it prejudiced him by "so infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The district court, which was in the best position to judge, found that the overstatement was a mistake and a minor issue. Leaving aside whether such an "isolated, accidental" comment as this can ever satisfy the first prong,[2] Johnson cannot establish the requisite prejudice. The misstatement was made only once during opening statement, and the prosecutor immediately corrected the statement in his next breath and made no further reference to the five kilograms. Johnson's counsel had ample opportunity to address the misstatement in his own opening or closing presentations. And whatever impression the misstatement left on the jury, the gov-

---

[2] *Cf. United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (holding that isolated, accidental misstatements of testimony during closing arguments did not establish impropriety sufficient for prosecutorial misconduct).

ernment never put forward any evidence that five kilograms had been discovered during searches. We do not assume that such a discrepancy prejudices a defendant—it could just as easily harm the government's case. *See United States v. Akin*, 562 F.2d 459, 466 (7th Cir. 1977) (reasoning that when opening statement is not substantiated at trial "the Government rather than defendant was hurt by [the] failure of proof"). In light of the overall insignificance of the prosecutor's comments in its opening statement, as well as the substantial evidence against Johnson—including his own confession that he had received and sold more than five kilograms the night before—we hold that the district court did not abuse its discretion in refusing to grant a mistrial.

### B.  Lisa Lamb's Appeal

Lamb appeals both her conviction and sentence. The challenge to her conviction presents a closer question. We do not doubt that the jury reasonably concluded that Lamb did destroy evidence of her and Johnson's criminal conduct when confronted by federal agents with a search warrant for the Westmoreland residence. There is also little doubt that this conduct likely violated other statutes more precisely targeting the obstruction of federal investigations and search warrants. *See, e.g.*, 18 U.S.C. § 1519 (obstructing a federal agency's investigation); *and* § 2232 (destruction or removal of property to prevent seizure). The more interesting, and difficult, question is whether that conduct also violated the statute with which she was charged, to wit: "cor-

ruptly—alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object, or attempt[ing] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1). Lamb attacks her conviction on two fronts—the proper reach of 18 U.S.C. § 1512(c)(1) and the sufficiency of the evidence even under the government's interpretation. We review each of Lamb's challenges in turn.[3]

1. *Scope of 18 U.S.C. § 1512(c)(1)*

Lamb's primary contention is that she was mischarged under a statute that does not apply to the conduct alleged or proved, and thus that her conviction must be thrown out. This argument is purely legal. The provision in question, 18 U.S.C. § 1512(c)(1), was added to the statute as part of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102. Lamb claims that the law is confined to the destruction of documents and other records in the context of white-collar corporate fraud and does not

---

[3] Lamb also argues that the substantial evidence of her involvement with Johnson's cocaine dealing either constructively amended or fatally varied from her indictment for destroying a small quantity of cocaine base. But we conclude below that Lamb's involvement with and knowledge of Johnson's cocaine dealing was crucial to her conviction under § 1512(c)(1), so the government's evidence was entirely appropriate. The cases she cites for constructive amendment and fatal variance are inapposite.

extend to the destruction of drug contraband in antic-ipation of discovery by the authorities. Put differently, is the government overreaching by using a statute tar-geting white-collar crime to punish ordinary criminal conduct not envisioned by Congress when it passed the statute?

Section 1512(c)(1) applies to the destruction of any "record, document, or other object." Lamb argues that we should not interpret "other object" to include any and every object imaginable, but solely those objects similar to records or documents. This follows from an applica-tion of the principle of statutory construction often known by its Latin descriptor *ejusdem generis*—literally translated "of the same kind." According to it, "[w]here general words follow specific words in a statutory enum-eration, the general words are construed to embrace only objects similar in nature to those objects enumer-ated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001). Applied to this case, it would mean that only an "other object" that is similar in nature to records or documents would fall within § 1512(c)(1)'s scope.

Lamb argues that this interpretation is bolstered by the fact that Congress added § 1512(c)(1) in 2002 with Sarbanes-Oxley and meant to address the problem of white-collar financial crimes. The proof of such crimes often depends significantly on information contained in records and documents, which may be easy to shred or otherwise destroy in anticipation of an investigation. Therefore, it makes sense that Congress would specifically

single out records and documents for special protection. Thus, according to Lamb, the purpose of the statute confirms that "record, document, or other object" must be limited to items similar to records or documents that would evince the white-collar crimes that Congress targeted with Sarbanes-Oxley.

While it is not entirely unpersuasive, two principal defects ultimately doom Lamb's argument. First, Lamb's characterization of § 1512(c)(1) as limited to the narrow, white-collar context that prompted Sarbanes-Oxley does not square with the broader history of § 1512 and the statutory phrase at issue. When § 1512 was first enacted in 1982, it was not limited to the white-collar crime context. Rather, it was a general statute addressing witness tampering and intimidation. It criminalized any use of intimidation or physical force (or its threat), "to cause or induce any person to withhold testimony, or withhold a record, document, or other object from an official proceeding [or] alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding." Pub. L. 97-291, § 4 (codified at 18 U.S.C. § 1512(a)(2)). The statute has been modified numerous times since then, but has always continued to prohibit intimidating or "corruptly persuad[ing]" a witness to "withhold . . . a record, document, or other object" or to "alter, destroy, mutilate, or conceal" such an object. 18 U.S.C. § 1512(a)(2)(B), (b)(2)(A), & (b)(2)(B).

These other provisions were enacted well before Sarbanes-Oxley and there is no indication that Congress intended to limit their use to the white-collar context.

The vast majority of prosecutions under § 1512 appear to have involved tampering with witnesses' *testimony*, and that aspect of the statute clearly applies in any criminal context. *See, e.g. United States v. Murphy*, 406 F.3d 857, 860 (7th Cir. 2005) (conviction under § 1512(a)(2)(A) for using physical force against a witness with intent to prevent testimony in crack cocaine case). And where § 1512 has been used to prosecute efforts to encourage others to withhold or destroy evidence, courts have had no hesitation in reading "other object" broadly. *See, e.g.*, *United States v. England*, 555 F.3d 616 (7th Cir. 2009) (hiding car); *United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999) (painting over blood splattered on stone wall).

While § 1512(c)(1), in particular, was added to the statute in 2002 by Sarbanes-Oxley, the phrase "record, document, or other object" was taken directly from the original statutory text. The repetition of the same language tells us nothing of what Congress intended, or did, in 2002. Given the history of § 1512, it is not surprising that this and a number of other courts have applied the same language in § 1512(c)(1) just as broadly, reaching the destruction of evidence other than records or documents and outside the white-collar context—including contraband. In *United States v. Matthews*, we upheld the conviction of a police chief who destroyed a firearm that was to be used as evidence in a case against his friend who was charged as a felon in possession of a firearm. 505 F.3d 698, 704 (7th Cir. 2007). And Lamb's own brief confirms that *Matthews* is not an outlier: ten out of the twenty-seven prosecutions under § 1512(c)(1) across the country that she cites in her

brief—just over thirty seven percent—have involved an "other object" that would not meet Lamb's limited reading.[4] *See, e.g.*, *United States v. Ortiz*, 220 Fed. Appx. 13, 17 (2d Cir. 2007) (car); *United States v. Thompson*, 237 Fed. Appx. 575, 576 (11th Cir. 2007) (gun, money, and crack cocaine). While it is true that *Matthews* (nor, for that matter, any court to our knowledge) was presented with the same argument that Lamb makes, the uncontroverted impression of several courts cuts against her attempt to narrow the statute.

Second, *ejusdem generis* is "no more than an aid to construction and comes into play only when there is some uncertainty as to the meaning of a particular clause in a statute." *United States v. Turkette*, 452 U.S. 576, 581 (1981). Because the statutory text is clear, we have no need of recourse to *ejusdem generis*. And even assuming, *arguendo*, that the meaning of "other object" is somehow unclear, application of *ejusdem generis* does not particularly aid the statutory construction. In this case, the "specific" preceding terms "record" and "document" are nearly as general as "other object." Lamb points to corporate files, papers, diskettes, a computer hard drive, or any other object used to document or memorialize some other events as an example of an "other object" within the reach of her interpretation of § 1512(c)(1). But

---

[4] Two relevant cases decided since the parties submitted their briefs split evenly: compare *United States v. Moss*, 2011 WL 2118940 (E.D. La. May 24, 2011) (destroying a van) with *United States v. Stevens*, 771 F.Supp. 2d 556 (D. Md. 2011) (documents).

a reasonable interpretation of "record" and "document" might include all these examples, leaving "other object" void of meaning in Lamb's interpretation and thereby violating another principle of construction. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001). Rather than clarify an ambiguous statute, application of *ejusdem generis* would thus confuse the clear meaning of the text.

For these reasons, we hold that § 1512(c)(1) criminalizes the alteration, destruction, mutilation, or concealment of any object, including contraband.

### 2. *Forseeability of an Official Proceeding*

Conviction under § 1512(c)(1) also required proof that Lamb destroyed the evidence "with the intent to impair the object's integrity or availability for use in an official proceeding." Interpreting this provision in *Arthur Andersen v. United States*, 544 U.S. 696, 707-08 (2005), which involved document shredding, the Court admonished that it is "one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen." Lamb argues that her conviction cannot stand because there was insufficient evidence to prove that she believed her actions would affect a foreseeable official proceeding. And failing that, she argues that her conviction should be vacated (presumably for a new trial) because the jury was not adequately instructed that Lamb had to have foreseen an official proceeding to act corruptly under the statute.

We consider first the question of the jury instructions. Because Lamb did not object to the jury instructions or request the specific Forseeability instruction she now urges, we review the instructions only for plain error. *United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009). Lamb argues that she was entitled to an "explicit Forseeability instruction." She apparently leaves it to us to fashion the appropriate instruction, as she did not request such an instruction below and does not propose any specific language now. The district court in this case gave a Forseeability instruction. Specifically, it instructed the jury that to convict on the obstruction of justice charge, it must find that Lamb "attempted to destroy or conceal an object" and "acted with the intent to impair the object's availability *for use in an official proceeding*." It also specified that this "official proceeding" was "the federal grand jury or a proceeding in the United States District Court for the Southern District of Illinois," but "need[ed] not be pending or about to be instituted at the time of the offense." We approved virtually identical jury instructions in *Matthews*, 505 F.3d at 704-05. Here, just as in *Matthews*, the instructions clearly informed the jury that it could only convict Lamb if it found that she attempted to destroy or conceal the crack cocaine with the intent to prevent its use in a federal grand jury or criminal proceeding in the District Court for the Southern District of Illinois. *See id.* at 708. Thus, the jury could not have convicted Lamb unless it found that she foresaw such a proceeding. The instructions adequately conveyed § 1512(c) (1)'s nexus requirement; there was no error.

Next, we turn to the sufficiency of the evidence. We review de novo challenges to the sufficiency of the evidence, viewing "the evidence in the light most favorable to the verdict and will reverse only if no rational trier or fact could have found [the defendant] guilty of the charges beyond a reasonable doubt." *United States v. Williams*, 553 F.3d 1073, 1080 (7th Cir. 2009) (quoting *United States v. DeSilva*, 505 F.3d 711, 715 (7th Cir. 2007)). Lamb argues that if we sustain her conviction, we endorse the idea that mere knowledge of a criminal investigation is enough to trigger § 1512(c)(1) and she insists that this cannot be what Congress intended because it has enacted separate statutes that more precisely address the conduct at issue here. Section 1519, for example, criminalizes the obstruction of a federal investigation, and § 2232 criminalizes the destruction or removal of property to prevent its lawful seizure. She asserts that such an extension of § 1512(c)(1) would drag in all sorts of run-of-the-mill "obstructive" conduct—from tossing drugs or money out of a car window during pursuit by the police to flushing evidence down the toilet at the first sign of a police investigation.

Lamb's argument appears to invoke the rule of lenity, where criminal statutes must be construed narrowly. But we cannot accept this argument. Lamb would have us read the statute more narrowly than its plain terms suggest and the rule of lenity does not require this. *See United States v. LaFaive*, 618 F.3d 613, 618 (7th Cir. 2010) (declining to apply rule of lenity where statute was unambiguous). Further, there is no suggestion that Congress could not include even the most mundane destruction of evidence. Clearly, such obstructive conduct *is* illegal

under other statutes. Nor is there any rule that two statutes cannot overlap, even significantly. The fact that Lamb's conduct would also violate statutes more tailored to her specific actions does not mean that it does not also violate the more general provisions of § 1512(c)(1).

Moreover, it cannot be that the government needed to prove that Lamb *knew* that her conduct would affect a particular official proceeding: § 1512(f)(1) instructs us that "[f]or purposes of this section an official proceeding need not be pending or about to be instituted at the time of the offense." It simply needed to provide enough evidence that Lamb foresaw that the contraband might be used in an official proceeding and destroyed it with the intent of preventing that use. But why else would Lamb aggressively destroy contraband while authorities were attempting to exercise a search warrant, other than to prevent the discovery of that evidence? And why would she want to prevent that discovery, if not to minimize or eliminate the evidence that could be used against her in a criminal prosecution?

There was evidence that Lamb was aware of, and perhaps deeply involved with, Johnson's cocaine dealing. Given her level of involvement, it was not unreasonable for a jury to assume that Lamb was aware of how much difference the type and quantity of the drugs discovered could make, and that she destroyed the cocaine base with the intent to minimize the evidence against her and Johnson at their eventual criminal prosecution. And this is not a case of a suspect panicking and tossing contraband out the window of a fleeing vehicle. Rather, when threatened with a search warrant, Lamb slammed closed

the metal door, then while the police were attempting to force their way into the house, she spent over 20 minutes deliberately eradicating evidence of her and Johnson's criminal activity.

Possibly at first Lamb did not believe that the people at the door were really police. But the ensuing activity of federal agents as well as local police and firefighters should have convinced her otherwise. This was enough evidence for the jury to conclude that Lamb foresaw criminal prosecution and used the last few minutes before they gained entry to minimize the evidence against her and Johnson.

The evidence may not have been overwhelming. But that is often the case when attempting to prove what was in a defendant's mind. The jury could have believed, as Lamb urged, that she acted out of panic or because she believed the cops were crooked and out to steal the drugs. The jury was not required, however, to accept Lamb's version of events. Given Lamb's knowledge of Johnson's cocaine dealing and the quantities involved, the jury could reasonably believe that Lamb foresaw that any contraband discovered in the search would be used against her and Johnson in official proceedings. Therefore, the jury could reasonably conclude that she foresaw proceedings in the federal grand jury or the District Court for the Southern District of Illinois, and destroyed cocaine base to prevent that use.[5]

---

[5] We need not decide whether knowledge of *any* investigation is sufficient for a conviction under § 1512(c)(1), or even

(continued...)

### 3. *Relevant Sentencing Conduct*

Finally, Lamb argues that the district court incorrectly applied the accessory-after-the-fact cross-reference under Federal Sentencing Guideline § 2X3.1. We review the calculation of the sentencing guidelines range de novo, but the district court's underlying findings of fact only for clear error. *United States v. Quintero*, 618 F.3d 746, 755 (7th Cir. 2010). There is no question that § 2X3.1 applies here. Section 2J1.2, the guideline applicable to § 1512(c)(1), clearly instructs district courts that "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 *in respect to that criminal offense*." Rather, Lamb's contention is that the "underlying offense" for purposes of the § 2X3.1 cross-reference should have been possession of cocaine base rather than Johnson's cocaine distribution conspiracy. But given the evidence that Lamb was aware of and involved with Johnson's cocaine distribution, the district court did not clearly err in finding by a preponderance of the evidence that Lamb destroyed evidence at the Westmoreland residence to obstruct the investigation and prosecution of the broader conspiracy, not merely her own possession. Based on that finding, the district court correctly applied the guidelines using the con-

---

[5] (...continued)
whether a person who destroys evidence when confronted with a search warrant *always* violates the statute. It is enough to conclude that under the facts in this case, the jury could conclude that Lamb foresaw a grand jury or criminal proceedings when she destroyed the contraband.

spiracy as the underlying criminal offense that Lamb sought to impede.

## III.

For the reasons above, we find no merit in Johnson's arguments on appeal: the search warrant for the Westmoreland residence was valid and the district court did not abuse its discretion in refusing Johnson's requested special credibility instructions or denying the motion for mistrial. His conviction is therefore AFFIRMED. We also cannot accept Lamb's arguments limiting the scope of 18 U.S.C. § 1512(c)(1). The statute covers contraband in drug cases as well as records in corporate fraud cases, and her knowledge of a government investigation is sufficient to sustain the jury's conclusion that Lamb foresaw an official proceeding when she destroyed evidence. Further, the district court properly counted drugs from the conspiracy against her at sentencing. Her conviction and sentence are therefore AFFIRMED.